# REBECCA RINGGOLD and others, Negroes, *vs.* DAVID BARLEY.

If a person leaves this State and removes to another, with an intention of remaining there for an indefinite time, and as a place of fixed present domicil, it becomes his place of domicil, notwithstanding he may entertain a floating intention to return at some future period.

A citizen of one State may break up his establishment, and, with the avowed purpose of becoming a resident of another, may actually leave his place of former abode, yet if before he reaches the point of his destination he

changes his purpose and returns, he does not thereby forfeit his residence or his rights as a citizen at the place of his first abode.

A mere intention to acquire a new domicil without the fact of actual removal avails nothing, neither does the fact of a removal without the intention.

When once removed to his new domicil the party's purpose to remain need not be fixed and unalterable; if it becomes a place of *fixed present domicil*, it will be sufficient to fix a residence, though there may be a *floating intention to return* to his former place of abode at some future period.

Where the verdict and judgment in a petition for freedom were in favor of the defendant, he cannot sustain an appeal though he has taken an exception, because he is not aggrieved by the result of the trial below.

CROSS-APPEALS from the Circuit Court for Kent county.

This was a petition for freedom, filed on the 14th of June 1851, by Rebecca Ringgold and her two children, the one four and the other two years of age. The facts of the case are sufficiently stated in the opinion of this court.

*1st Exception.* The petitioners introduced a witness, to prove the declarations of Money as to his intention of settling in Missouri, but he gave evidence different from that which they expected, whereupon they called another witness, to prove that the first had during the trial made a statement to their counsel different from that deposed to. Their counsel disclaimed any intention of impeaching the first witness, but being surprised, the evidence was offered to show that the witness was mistaken and his memory defective. The court, (HOPPER, J.,) rejected the testimony, on the ground that it was an impeachment of the petitioners' own witness, and to this ruling they excepted. (As this court declined to decide the point raised by this exception, the argument upon it is not reported.)

*2nd Exception.* This was taken by the petitioners to the refusal of the court to grant their prayer, which is fully stated in the opinion of this court, and to the instruction of the court, that if the jury believe that Money did, at any time after his arrival, positively determine to make Missouri his place of residence, if but for one moment, then he became a citizen of Missouri, although afterwards he might have determined to remove to Maryland.

*3rd Exception.* This exception was taken by the defendant to the refusal of the court to grant an instruction, that if the jury believe from the evidence that Money was never presented, indicted, or convicted, of any offence under the act of 1831, ch. 323, then the petitioners are not entitled to their freedom. (The point raised in this exception not having been decided by this court, the argument upon it is also omitted.)

The verdict and judgment were in favor of the defendant, and both parties appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, MASON and TUCK, J,

*George Vickers* for the petitioners.

1st. If a citizen of one State thinks proper to change his domicil and to remove with his family to another, with a *bona fide* intention to reside, he becomes *instantly* on reaching that State a citizen of it. 3 *Wash. C. C. Rep.*, 546. *Cooper vs. Galbraith.* 1 *Speers' Eq. Rep.*, 1, *Bradley vs. Lowry. Story's Conflict of Laws,* sec. 46. The prayer in its essentials is framed in the language of Judge Story, in the section referred to. If the party removed to Missouri with the intention of indefinite residence, as a place of *fixed present domicil,* and engaged in agricultural pursuits, having reference to his nineteen months' residence there, it was his place of domicil, notwithstanding a floating intention of returning to Maryland. The cases referred to by Judge Story sustains the position of the text, 16 *Johns.*, 128, *Elbers vs. The United Ins. Co.* 8 *Cranch,* 253, 279, *The Venus.* 4 *Harrington,* 558, *State vs. Frest.* 1 *Texas' Rep.*, 401, *State vs. Casinova.* The object of Money's removal to Missouri was to obtain a domicil, He ceased to be a citizen of Maryland; he left no place, no foot of land to which he could return as his home; he detached himself from this State and became *instanter* on his arrival in Missouri a citizen of that State. His pursuits during a residence of nineteen months afford the strongest presumptive proof of his intention to become, and of his hav-

ing become, a citizen of Missouri. But after he commenced farming, after he ascertained the price and quality of government lands, when he found his health less robust than he anticipated, and recuperating more slowly, he talked of returning to Maryland, expressed a wish, and may have had a vacillating and indefinite intention to do so. But such a floating intention, a *quasi animus revertendi* could not destroy the legal effect of his previously formed intention of becoming a citizen of Missouri, followed by acts of a fixed, tangible character of settlement and occupation. His affidavit, made in March 1854, to a list of slaves under the act of 1833, ch. 87, passed subsequent to his return, speaks *of his intention to become* a citizen of Maryland, which necessarily involved a previous loss of residence. The court erred therefore in rejecting the petitioners' prayer.

2nd. But the court erred also in its instruction. The impression the instruction would naturally make on the minds of the jury would be, that Money must have expressed a "*positive determination*" after his arrival in Missouri to make it his residence. There is no process by which a positive determination can be ascertained but the declaration of party. One might sell his property, discontinue all business operations, remove with his family into another State, engage in his wonted avocation for ten or more years, yet if it were impossible to prove a declaration of intention to change domicil, he could not, under the court's instruction, be a citizen of the State in which he resided. It is submitted therefore that the strong language of the court is not sustained by the adjudged cases nor the analogies of the law. A declaration of intention is only one mode of giving character to acts, but the acts themselves raise equally a strong presumption of intention, and the law affixes to certain acts as definite motives as if they had been proclaimed.

3rd. As to the appeal by the defendant, the petitioners move to dismiss it with costs, because the act of 1785, ch. 87, sec. 6, does not give the right of appeal in such cases, but is designed to afford an appeal only in cases where the

final judgment of the court is prejudicial to the party. The judgment is the grievance complained of and the matter appealed from. Unless the judgment be rendered against the party appealing, or unless it be for less than his claim, unless he be prejudiced by it, an appeal will not lie. 8 *Gill,* 229, *Neptune Ins. Co.*, vs. *Montell.* 10 *G. & J.*, 7, *Neel vs. Hughes.* 9 *G. & J.*, 461, *Union Bank vs. Planters Bank.*

*B. C. Wickes* for the defendant.

1st. I do not propose to examine how far the law of the petitioners' prayer, as a general proposition, may be sustained by the text writers upon the subject of residence, for I hold:— *first*, that it is not sustained by the decision of our own courts upon this very question of residence, as involved in the act of 1831 and in this petition; and *second*, that the instruction as given is in exact conformity with these decisions. The proposition embraced in the prayer is simply this, that if Money left Maryland with his family and servants and removed to Missouri, with the intention of remaining there for an *indefinite* time, and as a place of fixed *present* domicil, and while there engaged in agriculture, &c., it became his place of domicil; that is, it became his home, and he lost his residence in Maryland, as intended by the act of 1831, ch. 323. In the case of *Baptiste vs. Valunbrun,* 5 *H. & J.*, 86, the defendant was driven from St. Domingo by an insurrection of negroes; she fled to New York with her servants, remained there five years and then removed to Baltimore, carrying her negroes with her, where she remained twelve or fifteen years. The court decided, "that the defendant had not become a resident of this State, as contemplated by the law of 1796, ch. 67," upon the ground:—*first*, of necessity, that she was compelled to fly, &c.; and *secondly*, because "she had constantly and uniformly declared her intention to return to her own country when circumstances should permit, and for this reason never became a citizen of the United States." Now it cannot be questioned, that in that case the party came to this State with an intention of remaining an *indefinite* time, and that she made it her place of fixed *present* domicil, yet she was not a resident

under the act of 1796 for the reason above stated. Now why does this expression of intention to return to her own country prevent her becoming a resident of this State? Does its force rest in the positive intention to return or in the negation of an intention to remain permanently in Maryland? She had made Maryland her fixed present domicil, but "she was a stranger," "a sojourner," because she had no *fixed permanent home* here; because she had not the intention, positive and distinct, to make it her permanent home; she had not "*the animus*" to reside here. Here then is the proposition distinctly announced, that there must be *intention* to make a fixed home. Money had not this intention, for the prayer concedes his intention was to remain only an indefinite time, and that he had a *floating* intention all the time to return to Maryland. Again, in the case of *Cross vs. Black*, 9 *G. & J.*, 214, the court say, the "purpose to remove them out of the State *permanently* and place them elsewhere, and this being consumated, the master then assumes the attitude of owner of non-resident slaves;" again, "the case made by the petitioners does not consumate the purpose of a *permanent* abandonment of the State." Now the language of the court in its instruction embracing the single idea, that if Money, upon his arrival in Missouri, did positively determine, if but for a single moment, to make it his residence, he then became a citizen of that State, is in stricter conformity with the decisions above cited, a more distinct and explicit statement of the law, and far less liable to mislead the jury than the prayer of the petitioners.

Upon the motion to dismiss the defendant's appeal, the learned counsel cited and commented upon 8 *Gill*, 376, *Winter vs. Donovan;* 4 *H. & McH.*, 295, *Mahoney vs. Ashton;* 1 *Gill*, 32, *O'Reilly vs. Murdock;* 9 *Gill*, 98, *State vs. Milburn*, and 4 *G. & J.*, 407, *Charlotte Hall School vs. Greenwell.*

MASON, J., delivered the opinion of this court.

The appellants filed their petition in Kent county circuit court, in which they claim their freedom under the act of Assembly of the year 1831, ch. 323, sec. 4. By that act it is

provided, that it shall not be lawful to import or bring into this State any negro slave, for sale or to reside; and any person so offending shall forfeit for such offence the negro brought into the State contrary to this act; *and such negro shall be entitled to freedom*, &c.

The testimony presents substantially this case: In the year 1832, Money, under whom the appellee claims the negroes, having sold all his property in Maryland, left for the State of Missouri, carrying with him the petitioner and other of his slaves, together with his own family. Such of his slaves as were unwilling to remove with him to Missouri had been previously sold to the south. He had repeatedly declared his intention of settling in Missouri and of purchasing public lands in that State. That said Money, immediately on his arrival in Missouri, rented land and commenced farming; that he continued to farm till November 1833, when, falling into bad health and changing his purposes, he sold out his property of every kind, except his slaves, and returned to Maryland, bringing with him the petitioner, Rebecca. On the 19th of March 1834, Money returned a list of the slaves so brought back with him to the clerk of Kent county court, accompanied with the declaration, verified by oath, of his intention to become a citizen of this State.

Out of this state of facts several questions arose in the trial below. We will proceed to consider, first, the questions presented by the *second exception*. The testimony having been closed, the petitioners prayed the court to instruct the jury, "that if they believed Money left the State of Maryland with his family and servants and removed to the State of Missouri, with an intention of remaining there for an indefinite time, and as a place of fixed present domicil, and while there engaged in agriculture, it became his place of domicil, notwithstanding he might have entertained a floating intention of returning to Maryland at some future period." This prayer was rejected, whether properly or not we are now required to decide.

It is settled by many well adjudged cases, especially by the case of *Cross vs. Black*, 9 *Gill & Johns.*, 198, that a citizen of one State may break up his establishment, and, with the

avowed purpose of becoming a resident of another, may actually leave his place of former abode, yet if before he reaches the point of his intended destination changes his purpose and returns, he does not thereby forfeit his residence or his rights as a citizen at the place of his first abode. The mere intention to acquire a new domicil without the fact of an actual removal avails nothing, neither does the fact of a removal without the intention. *Somerville vs. Somerville,* 5 *Ves.,* 750, 787. *Harvard College vs. Gore,* 5 *Pick.,* 370. When once removed to his new domicil, however, the party's purpose to remain need not be fixed and unalterable. If it becomes a place of *fixed present domicil* it will be sufficient to fix a residence, and although there may be a *floating intention to return to his former place of abode at some future period,* still these circumstances will not defeat the newly acquired residence or the rights and obligations which attach to it.

The question now before us is, was there evidence tending to satisfy the jury that Money did acquire such a residence or domicil in Missouri, as to forfeit his former residence in Maryland? In pursuance of the intention formed in Maryland, he did take up his abode in Missouri, and commenced pursuing the usual avocations of life. He identified himself and all his interests, for the time being at least, with his new place of abode. If his expectations had been realized and his hopes fulfilled, he doubtless would have made this new location his permanent abiding place. Under such circumstances we cannot but regard the residence of Money, at least, *as a place of fixed present domicil,* notwithstanding he may have had *a floating intention* to return to Maryland at some future period.

If *Story's Conflict of Laws* is to be regarded as authority upon such questions, it settles the very point now under consideration. Indeed the appellants' prayer which was rejected, presents not only the principle announced by *Story,* ( *Conflict of Laws, sec.* 46, *page* 58,) but even employs his identical language, and to sanction that rejection would be to repudiate

Ringgold *et al.*, *vs.* Barley.

the high authority of Judge Story, which we are not prepared to do.

The case of *Baptiste vs. De Volunbrun*, 5 *Har. & Johns.*, 86, is entirely dissimilar from this. In that case the party *was compelled by necessity, a vis major, which she could not resist,* to leave her domicil and come to this State, and she *"constantly and uniformly declared her intention to return to her own country whenever circumstances would permit her to do so with safety."* In the present case the party left his first domicil voluntarily and with the avowed purpose of changing his place of abode, and in accordance with this purpose did actually take up his residence in another State, in the manner before detailed.

Admitting the instruction which the court gave, after refusing the prayer of the appellants, to be correct, as an abstract legal proposition, yet, upon the testimony in the cause, it did not present the law to the jury in a light so favorable to the appellants as the prayer presented by them, and which we think they had a right to insist upon. The refusal of it was therefore erroneous, notwithstanding the substitute for it given by the court.

We have not deemed it necessary to consider or decide the question presented by the *first exception*, relating to the admissibility of certain testimony therein set out, because it is not probable, upon a future trial, that the appellants will find themselves in a predicament like the one which they now ask to be relieved from.

Nor do we feel at liberty upon this appeal to express any opinion in regard to the necessity of a conviction of the master before the slave can assert his freedom, so fully discussed upon the appellee's cross-appeal, because it is a point not presented by this record in such a way as would warrant us in deciding it.

*Judgment reversed and procedendo awarded.*

Upon the appeal by Bailey, the same judge delivered the following opinion of this court:

This is a cross-appeal, and a motion is made by the appellees to dismiss it.

Upon the trial below instructions were asked by both the plaintiffs and defendant, and each was denied by the court. The verdict and judgment were in favor of the defendant, and the plaintiffs appealed. The *defendant* thereupon also appealed.

Under such circumstances we think the defendant cannot sustain his appeal. He cannot be said to be aggrieved by the result of the trial below, because the verdict and judgment were in his favor. If the instructions which he asked for had been granted, the result of the trial could not have been more favorable to his case.

*Appeal dismissed.*