# THE STATE, EX REL. GRAHAM, IN RE TONER.

[APPLICATION FOR CERTIORARI TO REVISE PROCEEDINGS UNDER HABEAS
CORPUS.]

1. *Liability of domiciled foreigner to military or militia service.*—A foreigner, domiciled in this country, is liable to military service in the armies of the Confederate States; and if he is discharged from that service, and afterwards acquires a residence in this State, he is liable to militia service at the call of the State, although his discharge from the military service of the Confederate States was granted on the ground that he was not domiciled in this country.

2. *Proof of domicile.*—A foreigner, who enlisted in the military service of the Confederate States, as a volunteer, in Mississippi; was afterwards discharged from that service, on the ground that he was not domiciled in this country; subsequently came to this State, engaged in business here, and was so engaged when taken as a militia-man,—must be regarded as having acquired a domicile here; and his declarations while here, to the effect that he intended to return to his native country, "if he could get out," so soon as he had earned enough money, and that he had saved "nearly enough hard cash" for that purpose, are entitled to but little consideraton, and do not bring him within the principle which holds a foreigner, *in itinere* to his native country, remitted to his domicile of origin.

IN the matter of the petition of Joseph Toner for the writ of *habeas corpus*, by which he sought to procure his discharge from the custody of Col. Wm. B. Graham, commanding the second-class militia of the county of Montgomery. The application was made to the probate judge of Montgomery county, who, on the hearing, discharged the petitioner from custody. A bill of exceptions was reserved to the ruling and decision of the probate judge, by the counsel who represented the State; and application is now made to this court, in the name of the State, for the writ of *certiorari*, or other remedial process, to remove into this court, for revision, the proceedings had before the probate judge. The material facts of the case are stated in the opinion of the court.

P. T. SAYRE, for the State.
JNO. A. ELMORE, *contra*.

A. J. WALKER, C. J.—It is shown by the record in this case, that the petitioner is a native of Ireland; that he volunteered in the military service of the Confederate States, in the "Vicksburg Sharp-Shooters;" that he was discharged from that service, in Virginia, on the 31st May, 1863, on the ground that he was a foreigner not domiciled in the Confederate States: that, eight or ten months before the commencement of this proceeding, he came to the city of Montgomery, and engaged in the keeping of a bar, which business he still continues; and that since he has been in Montgomery he has frequently declared, that Ireland was his home, that he intended to return thither as soon as he could get money enough, "if he could get out," and that he had nearly enough "hard cash" for that purpose, and that he came to Montgomery with a view of getting out through New Orleans. The petitioner states, in his petition, that he was in Mississippi when he volunteered; and the discharge which he produces indicates the same fact. The case will, therefore, be treated as if that fact were established, without examining the question, whether it is legitimately in evidence in the case.

Upon these, which are all the facts we have before us,

was the petitioner liable to military service in the Confederate States? This is dependent upon the other question, whether he has acquired a domicile in this country. To the latter question we address ourselves. He is found in this country, engaging in its military service as a member of the "Vicksburg Sharp-Shooters." Not a particle of explanation of his abode in this country is given. It is a well-established principle, that the place where a man lives is taken to be his domicile, until other facts establish the contrary.—Story on Conflict of Laws, § 46; 1 Kent's Com., m. p. 7–76. The fact of actual abode in this country at the time of the enlistment is unexplained by any contemporaneous events, or acts or declarations. The presumption from this unexplained residence of a domicile is greatly strengthened, by his engagement in the military service of the government. A temporary military service possibly may not be conclusive evidence of domicile; but it is certainly a fact powerfully contributing to establish the domicile. Aside from the authorities to which reference is made, it is a fact, which, from its very nature, goes to show that the party regarded the country as his home.—Phillimore on Domicile, m. p. 66–77.

The petitioner was discharged from the army, upon the ground of his being a foreigner, without a domicile in this country. This discharge is not binding upon the State, in this proceeding. It is *res inter alios acta*, and, besides, has none of the qualities of a judicial determination of the party's *status*. After his discharge, the party comes to the city of Montgomery, and engages in business, and continues to pursue it. He declares, during his stay in Montgomery, that he regarded Ireland as his home, and intended to return as soon as he obtained the necessary funds. These declarations are made after he acquired a domicile, and are perfectly consistent with that fact. They indicate an intention to change his domicile—not that he had not obtained a domicile in this country. These declarations, if the utmost weight be allowed to them, could not be regarded as evidence that he had not acquired a domicile; but in fact such declarations, when made after an interest is acquired in making them, as a means of avoiding military service;

are entitled to but little, if any consideration. A mere floating intention to return, at some future, indefinite time, cannot prevent the acquisition of a domicile.

The petitioner had not put himself in motion to quit the country. On the contrary, the time for him to commence his return had not, upon his own declarations, arrived. He is not, therefore, in a position to avail himself of the principle, that a foreigner, *in itinere* to his native country, and not intending to return, regains his domicile of origin.

The residence of the petitioner in Montgomery, accompanied by his engagement in business, fixes his domicile in this State. He does not appear to have had any house, or property, or business, or family, in Mississippi, or in any other one of the Confederate States. His declarations show no intention to go to any other State, but to go, when he left, to Ireland. We do not think that it can be intended that his domicile was in some other one of the Confederate States, and not in Alabama. He had not regained his native domicile; and Alabama must, under the evidence, be deemed his residence.

Having been discharged from the service of the Confederate States, as having no domicile in the country, the State may, at least until that government asserts its claim to his service, retain him as a militia-man.

The order of the probate judge is reversed and annulled.