Mr. Justice Bradley
delivered the opinion of the Court:
This is a proceeding for divorce. The petition was filed *237 October 25, 1887. The petitioner, Sarah Bradstreet, alleges in her petition that she was married to the defendant, George P. Bradstreet, in the District of Columbia, the 6th day of August, 1886 ; that she is temporarily stopping in the city of Detroit, State of Michigan; that she had resided in the District -of Columbia for more than ten years prior to filing her petition, and that the defendant is also a resident of said District of Columbia. Her prayers for relief are based upon several alleged acts of cruelty on the part of the defendant, which are set forth in the petition, some of which are claimed to have occurred in the District of Columbia, and the last of which are alleged to have occurred outside of this District, some time in the summer of 1887.
The defendant was served with process, and on November 12, 1887, he filed his plea in bar, alleging that petitioner was not a resident of the District of Columbia at the time of filing her petition; that she had not resided therein for two years next preceding her application; that before her marriage with defendant she was a resident of, and domiciled in, the State of Michigan; that she deserted the defendant and went to the State of Michigan, where she resided at the date of filing her petition; and that defendant is not, and never has been, a resident of the District of Columbia,- but has always been, and still is, a resident of Royalton, Vt., which is his domicile.
Issue being joined upon this plea, evidence was taken in behalf of both parties, and the cause having been set down for hearing, it has been certified to this court to be heard in the first instance.
Prom the testimony it appears that at the time of her marriage to the defendant the petitioner was a widow; that she came to the District of Columbia with her first husband, H. H. Cushing, and their children, and commenced housekeeping with him here in the month of May, 1868; that she continued to reside here with him until his death; that in 1872, after his death, she obtained a position in the *238 Post-Office Department, and continued as a clerk in said Department until June 28, 1886, when she resigned her position or was removed by the Postmaster-General, when she went to Michigan with her daughters; that during all this time she kept house and resided (with her children, two daughters and a son,) in this District; that when she went to Michigan in June, 1886, she left her house in this city open and in charge of servants; that she left Michigan and returned to Washington, and was married to the defendant, August 6, 1866; that she returned to Washington for the purpose of looking after her house, and to decide whether to accept another Government position; of which she then had the promise, or to marry the defendant; that after her marriage to defendant, he rented a house, No. 2017 Q, street N. W., in this city, where she lived with him until the summer of 1887, when she went away with him for a summer trip, during which, on account of grief at her daughter’s death, and because of defendant’s alleged bad treatment, in the month of August, she went to visit her brother in Detroit; that she intended to return to this District, but, upon the advice of her brother, she remained in Detroit pending the divorce proceedings, her petition for divorce being sworn to in that city, and forwarded from there to this jurisdiction to be filed.
It is beyond dispute that the petitioner was a bona fide resident of the District of Columbia from 1868 until she resigned her office in June, 1886. It is claimed, however, that Michigan was her domicile of origin, and that when she returned there in June, 1886, she wrote to the defendant a letter, which, in stating that their former relations were now severed and entirely at an end, also uses the expression “ I never shall return,” and that inasmuch as the domicile of origin reverts easily, this declaration coupled with actual presence in that State, effected the change of domicile. But the evidence shows that she had the promise of another office in Washington ; that she had left her house *239 here open and in charge of servants, and that she fully intended to return, and that statement considered in its connection, and with the circumstances surrounding it, appears rather to be a declaration that she would never return to her former relations with the defendant.
It is also claimed that the petitioner was not a resident of this District at the time of her application, inasmuch as she deserted the defendant at Saratoga, in August, 1887, and went to Michigan to permanently remain. This claim is not sustained by the evidence, which shows that she is temporarily visiting her brother in that State, and that she is abiding with him pending this proceeding and intends to return to this Distirct upon its termination.-
Unless, therefore, the law requires something more than actual bona fide residence in this District of the party complaining, in order to maintain a suit for divorce, and unless the defendant, at the time of the marriage, was domiciled in Vermont, and was there domiciled at the time of this application, and such domicile drew to it that of the petitioner, so that she was no longer a. resident of this District in the sense of the law from the time of her marriage to defendant, the requirement that the party applying has “resided within the District for two.years next preceding the application,” is fully satisfied by the proof in this case.
Was the defendant domiciled in Vermont? Vermont was his domicile of origin, but at the time of marriage he had not resided in that State for thirteen years. He had only visited his old home for a short stay in the summer. Had spent a part of his summers in travelling, and the remainder of the year he had resided in this District. This residence here was not for any definite, limited stay, but for ten years defendant had been clerk to the' Judiciary Committee of the Senate, intending and expecting to remain here as long as that employment lasted. During this time he had boarded with the petitioner; h‘ad furnished a room in her house, and had removed furniture from Vermont to *240 Washington, for that purpose.' He had no home in Vermont in the proper sense of the word. His father was domiciled in that State, and the defendant was accorded the privilege of stopping at his father’s house when visiting Royalton in consideration of the payment of board. He had not voted or paid taxes in that State for several years, but whether he had preserved or lost his political rights is not considered material. He was married here. He rented and furnished a house where he resided with petitioner and her daughters, and the evidence discloses efforts on his part to purchase that house, and declarations that if he could purchase he wpuld spend the .summers here.
“If a person has actually removed to another place with an intention of remaining there for an indefinite time, and as a place of fixed present domicile, it is deemed his place of domicile notwithstanding he may entertain a floating intention to return at some future period.” Story Confl. Laws, Sec. 46.
“But what amount of proof is necessary to change a domicile of origin into a prima facie domicile of choice ? It is residence elsewhere or where a person lives out of the domicile of origin. That repels the presumption of its continuance, and casts upon him who denies the domicile of choice the burden of disproving it. Where a person lives is taken prima facie to be his domicile until other facts establish the contrary.” Ennis vs. Smith, 14 How., 422.
■ In Ringgold vs. Bailey, 5 Md., 186, the court says upon this subject: “The party’s purpose to remain need not be fixed and unalterable. If it becomes a place of fixed present domicile it will be sufficient to fix a residence, and although there may be a floating intention to return to his former place of abode at some future period, still these circumstances will not defeat the newly acquired residence or the rights and obligations which attach to it.”
In Mooar vs. Harvey, 128 Mass., 219, it appeared that defendant enlisted in the army, and in February, 1864, he *241 was detailed as bookkeeper in the Surgeon-General’s office in Washington. In 1869 he was appointed a clerk in the Treasury Department at Washington, which office he held at the time of suit; that since February, 1864, he had lived in Washington. Held, that although’the defendant was in military service, he could change his domicile to any place he saw fit. “The jury would be justified in finding that since 1864 he had actually lived in Washington with short occasional absences. This is one essential element of domicile in Washington. The remaining element is the intent with which he lived there * * * he lived in Washington, and all the outward indicia which usually determines the domicile of a person appointed to that place as the place where he resided and had his home. The evidence tended to show that he had not paid taxes nor voted in Lawrence since 1862. This failure to perform the duties and avail himself of the privileges of a citizen is a significant fact pointing to a change of domicile.”
The evidence shows that at the time of filing the petition in this proceeding,'the defendant had lived out of his domicile of origin for thirteen years, and that during that time he had resided in Washington. This was prima facie the domicile of choice, and imposed upon him the burden, which he also assumed by his plea, of proving that he had retained his Vermont domicile of origin. This burden has been assumed to be lifted by the inference sought to be drawn from the alleged temporary character of the defendant’s employment, and his presence in the District of Columbia, under such employment, has been, likened to that of a United States Senator, who may be temporarily located here representing the interests of his State. It is apparent, however, that the employment, although, subject to termination at any time by the will of the Judiciary Committee, was not of a mere temporary nature, but was for an indefinite time; that the duties of such employment required the presence of the defendant in Washington during the greater portion of *242 the year. Unlike a Senator he is pursuing here his own business, seeking his own interests, and representing himself exclusively. His acquisition of a new domicile here is not only not inconsistent with his employment, occupation, and interests, but is thoroughly consistent with them, and the legitimate conclusion from the whole evidence of his conduct and declarations is that this District was and is his domicile of choice.
If, therefore, in Sec. 740, E. S. D. C., the word “ resided ” means “ domiciled,” we find that the petitioner and defendant were here domiciled at the time of their marriage, and that this was their domicile at the time of making this application.
The result of this conclusion is, we overrule the plea to the jurisdiction and remand the case to the Special Term.