This is an action to establish a materialman's lien on real property in Piedmont, Alabama. Appellant, Noland Company, commenced the action by filing a complaint against Southern Development Co., Inc., Southern Development Company of Piedmont, Ltd., Management Builders, Inc., Lovelace Plumbing Contractors, Inc., and First National Bank of Montgomery, Alabama.
In the process of pretrial pleading and during the oral hearing no issue was taken nor testimony introduced against the interests of Southern Development Co., Inc., and First National Bank of Montgomery. The trial court entered a judgment in favor of Noland Company, but only against Lovelace Plumbing Contractors, Inc., which had, meanwhile, changed its corporate name to Lovelace Brothers, Inc. Therefore, the appellees are Southern Development Company of Piedmont, Ltd. (Southern Development), Management Builders, Inc., and Lovelace Brothers, Inc.
The trial court's findings were as follows:
 "Southern Development Co. [Ltd.] contracted with G.B. Construction Co. for it to build a project known as Piedmont Manor in Piedmont, Alabama; that G.B. Construction Co. as general contractor retained Management Builders, Inc. to supervise the construction project; that the subcontract for plumbing was let to Lovelace Plumbing Contractors, Inc. on May 8, 1978; that on May 26, 1978, Noland Company and Management Builders entered into an agreement wherein Management Builders would guarantee payment of purchases by Lovelace Plumbing Contractors for the Piedmont Manor project. On June 26, 1978, Noland Company subordinated this agreement to allow payments to be made to Lovelace's bank with reservations to rescind the subordination agreement of June 16, *Page 268 
1978. That on August 10, 1978, Management Builders sent a check to Lovelace and Noland in the sum of $7,689.96, and that this was the last payment made to Lovelace Plumbing Contractors; that there is no evidence that Management Builders or Southern Development Co. [Ltd.] owed Lovelace Plumbing Contractors any sum of money after the payment on August 10, 1978; that the sum of $21,384.00 is owed by Lovelace Plumbing Contractors to Noland Company as of this date.
 "The Court is of the opinion that the plaintiff is entitled to a judgment against Lovelace Plumbing Contractors, Inc. [Lovelace Brothers, Inc.] in the sum of $21,384.00, plus costs. The Court is further of the opinion that plaintiff did not give notice to owner of furnishing material to subcontractor as required by law. The plaintiff made a contract with Management Builders to protect their interest, but voluntarily subordinated their contract and later reinvoked their contract, which was honored by Management Builders as long as Lovelace Plumbing Contractors were the subcontractors. The Court is further of the opinion that the plaintiff is not entitled to a judgment or lien against any of the other defendants."
The trial court's factual findings have the effect of a jury's verdict. A judgment, grounded on such findings, is accorded, on appeal, a presumption of correctness which will not be disturbed unless plainly erroneous or manifestly unjust.Mayo v. Andress, 373 So.2d 620 (Ala. 1979); Cauley v. Sanders,388 So.2d 891 (Ala. 1980); Elmer Tallant Agency, Inc. v. BaileyWood Products, Inc., 374 So.2d 1312 (Ala. 1979).
Noland Company presents two issues for this court's review. The first is whether the trial court erred by refusing to impose a lien in its favor against the Piedmont Manor property, owned by Southern Development Company, Ltd., because of Noland's alleged failure to meet statutory notice requirements prerequisite to the establishment of a lien. Second, Noland Company contends the trial court erred in determining that Noland's contract of guarantee with Management Builders estopped Noland from asserting a statutory lien against Piedmont Manor.
Because the evidence is basically uncontroverted, we will make no further statement of the facts except as relevant to the issues here presented.
 I
Section 35-11-210, Code 1975, essentially provides that when a materialman furnishes materials to a subcontractor, and complies with the provisions of that section, he can take a lien on property involved. Two types of liens are provided for therein. First, the statute provides:
 "Every mechanic, person, firm or corporation who shall do or perform any work, or labor upon, or furnish any material, fixture, engine, boiler or machinery for any building or improvement on land, or for repairing, altering or beautifying the same, under or by virtue of any contract with the owner or proprietor thereof, or his agent, architect, trustee, contractor or subcontractor, upon complying with the provisions of this division, shall have a lien therefor on such building or improvements and on the land on which the same is situated, to the extent in ownership of all the right, title and interest therein of the owner or proprietor, and to the extent in area of the entire lot or parcel of land in a city or town; or, if not in a city or town, of one acre in addition to the land upon which the building or improvement is situated; or, if employees of the contractor or persons furnishing material to him, the lien shall extend only to the amount of any unpaid balance due the contractor by the owner or proprietor, and such employees and materialman shall also have a lien on such unpaid balance. . . ."
Noland Company claims under the above section.
The second portion provides a more inclusive lien in the event the materialman notifies *Page 269 
the owner of the property of its plan to supply materials prior
to furnishing them:
 "But if the person, firm or corporation, before furnishing any material, shall notify the owner or his agent in writing that such certain specified material will be furnished by him to the contractor or subcontractor for use in the building or improvements on the land of the owner or proprietor at certain specified prices, unless the owner or proprietor or his agent objects thereto, the furnisher of such material shall have a lien for the full price thereof as specified in the notice to the owner or proprietor without regard to whether or not the amount of the claim for such material so furnished exceeds the unpaid balance due the contractor, unless on the notice herein provided for being given, the owner or proprietor or his agent shall notify such furnisher in writing before the material is used, that he will not be responsible for the price thereof. Such notice may be given in the following form, which shall be sufficient:
"`To ________, owner or proprietor:
 "`Take notice, that the undersigned is about to furnish ________, your contractor or subcontractor, certain material for the construction, or for the repairing, altering or beautifying of a building or buildings, or improvement or improvements, on the following described property:
 _________________________________________________ _________________________________________________
 and there will become due to the undersigned on account thereof the price of said material, for the payment of which the undersigned will claim a lien.'"
Noland contends, and we agree, that the trial court erred in its judgment by imposing on Noland Company the prior notice requirement of the second portion of § 35-11-210 rather than the subsequent notice provision for declaring a more limited form of lien under the first portion.
Noland Company calls our attention to § 35-11-218, Code 1975, which provides as follows:
 "Every person, except the original contractor, who may wish to avail himself of the provisions of this division, shall before filing his statement in the office of the judge of probate, give notice in writing to the owner or proprietor, or his agent, that he claims a lien on such building or improvement, setting forth the amount thereof, for what, and from whom it is owing; and after such notice, any unpaid balance in the hands of the owner or proprietor shall be held subject to such lien. But the provisions of this section shall not apply to the case of any material furnished for such building or improvement, of which the owner was notified in advance as provided in section 35-11-210."
In Crane Co. v. Sheraton Apartments, Inc., 257 Ala. 332,58 So.2d 614 (1952), this court was confronted by the very issue presented by the instant case. There, notice to the owner was not given prior to the materialman's furnishing of goods to a subcontractor. This court held the materialman could, under the statute, fix a lien, on the building and land to the extent of any unpaid balance due the original contractor by the owner at the time the lien was claimed and notice was given as required by Tit. 33, § 46, Code 1940. That section is identical to the statute above quoted, and now applicable, § 35-11-218, Code 1975.
It is undisputed that Noland Company gave notice in writing to Southern Development Company of Piedmont, Ltd., the owner ofthe subject real property, that it was claiming a lien on Piedmont Manor. That notice stated, as per the statute, the amount claimed, for what, and from whom it was owing. It is undisputed that when that notice was given, there were monies due the original contractor from Southern Development.
Under the Crane interpretation of the above quoted series of statutes, the conclusion is inescapable that Noland complied with the statutory notice requirements. *Page 270 
 II
The second basis for the trial court's decision that Noland Company would not prevail except against Lovelace Brothers, Inc., is stated by that court as follows:
 "The plaintiff made a contract with Management Builders to protect their interest, but voluntarily subordinated their contract and later reinvoked their contract, which was honored by Management Builders as long as Lovelace Plumbing Contractors were the subcontractors. . . ."
Noland Company argues that because it does not wish to pursue its claim against Management Builders, Inc., on its agreement of guarantee, the agreement is not material to the issues in this case. We deem it significant in discussing this issue. An agreement by a person entitled to a lien that he will look exclusively to the contractor or some person other than the owner for the payment of his claim may be a waiver of his right to a lien. See United States v. Village of Alsip, 345 F.2d 365
(7th 1965), cert. den., 383 U.S. 906, 86 S.Ct. 242,15 L.Ed.2d 158 (1965). Floyd v. Rambo, 250 Ala. 101, 33 So.2d 360 (1948). In Floyd v. Rambo, this court outlined the application of the doctrine, in Alabama, of waiver as applicable to mechanic's liens:
 "While the lien created by the statute may be waived or released just as any other lien may be waived or released, the presumption is that the right to the lien exists if the claimant has brought himself within the protection of the statute by complying with all the formalities prescribed. This appearing, it rests upon the defendant to show that the claimant has knowingly surrendered or waived his lien.
 "`Whether or not the taking of collateral security by the contractor will amount to a waiver of his lien is a question upon which the courts are not in accord. Quite a number hold that it will, but it is believed that the weight of opinion is that unless there is manifest intention between the parties that it shall so operate, this will not be equivalent to a waiver. And especially is this true where the enforcement of the lien will not affect the vested rights of anyone. * * *.'" (Citations omitted.)
33 So.2d at 363.
Under Floyd, it is clear there was no express or implied waiver of its right to a statutory lien upon the part of Noland Company because of the guarantee agreement.
The agreement of guarantee entered into between Noland Company and Management Builders, Inc., provides in pertinent part:
 "It is expressly understood and agreed that notice of and requirement of legal proceedings against the original debtor named herein is hereby waived and that Noland Company may, at its discretion, grant an extension of the indebtedness or otherwise modify the terms of the debt, without impairing the obligation of the undersigned guarantor [Lovelace Brothers, Inc.]. The guarantor shall be liable to Noland Company for the debt according to the same terms of payment as that established by Noland Company for the original debtor as described herein."
We find no evidence of an express nor an implied intention in the above instrument by Noland Company to waive its statutory right to claim a lien against Piedmont Manor. Neither do we find the contract of guarantee to be inconsistent with the enforcement of a lien by Noland against Southern Development Company, Ltd. Furthermore, there was no evidence presented by defendants of a knowing waiver by Noland Company in any other instrument or by other actions upon its part.
Under Crane, it is clearly the defendants' burden to show that Noland Company knowingly surrendered or waived its right to a statutory materialman's lien fixed or imposed. Our careful review of the record has revealed the only evidence presented as to waiver was the guarantee agreement above quoted. We find, therefore, that *Page 271 
defendants failed to meet their burden of proof as to this issue.
Because the trial court misapplied the law set out in §35-11-210, Code 1975, and further, because it failed to apply correct legal precedents regarding an express or implied waiver of a statutory materialman's lien, we are compelled to reverse its decision and remand to that court with directions that it modify its judgment consistent with the views expressed herein.
REVERSED AND REMANDED WITH DIRECTIONS.
TORBERT, C.J., and FAULKNER, ALMON and ADAMS, JJ., concur.