494 So.2d 16 (1986)
Clemon NORA, Sr., Arthur Maye Smith, Theaddus Nora, Vern C. Nora, Sr., Irene Holmes, Perry Manual, and Elma Lee Childs
v.
Archie NORA, Jr.
84-726.
Supreme Court of Alabama.
July 18, 1986.
Robert D. Segall and E. Terry Brown of Copeland, Franco, Screws & Gill, Montgomery, for appellants.
Michael J. Bonnette, Natchitoches, La., and Fred Gray, Tuskegee, for appellee.
ADAMS, Justice.
This is an estate case.
Archie R. Nora died intestate in Tuskegee, Alabama, in 1980. The administrator of the decedent's estate filed suit against the potential heirs of the decedent's estate in the Circuit Court of Macon County in 1981 to determine which of them was entitled to share in the distribution of the estate. The decedent's estate consisted of personal property located in Tuskegee, Alabama.
The appellee, Archie Nora, Jr., is the purported illegitimate child of the decedent and was named as a defendant in the administrator's suit. The parties to this appeal do not contest that Archie Nora, Jr., is the illegitimate child of the decedent; however, he has never been legitimated by a judicial filiation proceeding or by acknowledgment. The appellants are collateral relatives and potential heirs of the decedent who were also named as defendants in the administrator's suit.
Archie Nora, Jr., moved the court to apply Louisiana law to the case, arguing that the decedent's domicile at his death was the State of Louisiana. This issue was tried to the court and the following evidence was presented: The decedent was born in Louisiana and lived in that state until he entered the United States military during World War II. He was stationed in Texas. The decedent initiated a divorce proceeding *17 while stationed in Texas and stated in that proceeding that he was a resident of Louisiana. Shortly thereafter, the decedent became mentally ill and was confined to a Veterans Administration Hospital in Iowa for treatment. Medical records reflected that decedent was diagnosed as suffering from dementia praecox, paranoid type. In 1944, the decedent was transferred to a Veterans Administration Hospital in Tuskegee, Alabama. The Veterans Administration declared the decedent incompetent and appointed a guardian to manage his veteran's benefits. The decedent remained at the Tuskegee hospital until 1964 or 1965, at which time he was placed in a Tuskegee foster home under the supervision of Robert and Georgia Turner. There was no indication that the decedent had recovered from his mental illness.
The Turners testified at trial that the decedent conversed with them and helped with household chores, went shopping with them, and attended church with them. However, the Turners could not say whether the decedent was sane during the time he lived with them. The Turners and a relative of the decedent testified that the decedent had stated that he did not wish to return to Louisiana except to visit.
Even though the decedent resided in Alabama, he never acquired an Alabama driver's license, never registered to vote, did not own real property, and never joined a church. He lived at the Turners' home until his death in 1980, and his body was transported to Louisiana, where it was buried.
Based upon this evidence, the trial court held that "the decedent was domiciled in the State of Louisiana at the time he became a member of the military service and never took any overt steps or unequivocally demonstrated any desire to acquire domicile at any other place." Therefore, the court concluded, Louisiana law was applicable in determining the distribution of the decedent's personal property.
In subsequent proceedings, the trial court held that Archie Nora, Jr., was the decedent's illegitimate child and that under Louisiana law, Archie Nora, Jr., inherited the decedent's property to the exclusion of all collateral relatives claiming a share of the estate. Thereafter, the appellants filed a motion for new trial, which was denied by the trial court. The appellants then made a timely appeal to this Court. Appellants argue that the trial court's determination that Louisiana was the decedent's domicile was erroneous.
In our resolution of the issue on appeal, we observe that the ore tenus rule is applicable to the trial court's holding. This is so because the trial court's determination of domicile was based on a factual determination regarding the decedent's intent to change his domicile. Since the ore tenus rule applies, the trial court's resolution of the factual issue is presumed to be correct and its findings will not be reversed on appeal unless plainly erroneous or manifestly unjust. Noland Co. v. Southern Development Co., 445 So.2d 266 (Ala.1984). Even if we disagree with the trial court's holding based upon the facts, we cannot substitute our judgment for that of the trial court. Storey v. Patterson, 437 So.2d 491 (Ala.1983).
After having carefully examined the record of the instant case, we are of the opinion that there is evidence to support the trial court's conclusion that the decedent's domicile was the State of Louisiana. The Court in Mitchell v. Kinney, 242 Ala. 196, 203, 5 So.2d 788, 793 (1942), made the following observations regarding domicile:
Domicile is defined as residence at a particular place accompanied by an intention to remain there permanently, or for an indefinite length of time. Ringgold v. Barley, 5 Md. 186, 59 Am.Dec. 107; Merrill's Heirs v. Morrissett, 76 Ala. 433; Allgood v. Williams, 92 Ala. 551, 8 So. 722; Holmes v. Holmes, 212 Ala. 597, 103 So. 884; Pope v. Howle, 227 Ala. 154, 149 So. 222; Ex parte Bullen, 236 Ala. 56, 181 So. 498; Ex parte State ex rel. Altman, 237 Ala. 642, 188 So. 685.
Domicile continues until a new one is acquired. Ex parte Bullen, supra; Talmadge's Adm'r v. Talmadge, 66 Ala. *18 199; State ex rel. Spence v. Judge, etc., 13 Ala. 805.
Change of domicile consists of an act and an intention, physical presence in the new domicile and the requisite intent to remain there for an indefinite length of time. The fact that a person lives at a particular place creates a prima facie presumption that such place is his domicile. The presumption is rebuttable by facts to the contrary. In re Toner, 39 Ala. 454; Hightower v. Ogletree, 114 Ala. 94, 21 So. 934; Lucky v. Roberts, 211 Ala. 578, 100 So. 878. In determining whether or not there has been a change of domicile the intention of the person whose domicile is in question is usually the controlling consideration. Ex parte State ex rel. Altman, 237 Ala. 642, 188 So. 685; Murphy v. Hunt, Miller & Co., 75 Ala. 438.
As stated above, generally, there exists a presumption that a person's place of residence is that person's domicile. However, a person who is inducted into military service retains residence in the state from which he is inducted until a new residence is established or the initial residence is abandoned. Dicks v. Dicks, 177 Ga. 379, 170 S.E. 245 (1933); Biri v. Biri, 192 So.2d 862 (La.Ct.App.1966). Under these circumstances, "[T]he presumption is that one in military service retains his prior domicile as long as any reasonable doubt thereof exists." Biri v. Biri, supra, at 865.
In the case at bar, the trial court concluded from the evidence that the decedent did not express a sufficient intent to remain in Alabama permanently or for an indefinite period of time. Therefore, the court concluded that the decedent's domicile in Louisiana at the time of his induction into military service continued to be his domicile until his death. Even though we may not have reached the same conclusion as the trial court in this case, there is evidence in the record to support the trial court's holding and, therefore, we cannot say that the resolution of the factual question pertaining to the decedent's intent was plainly erroneous or manifestly unjust.
Generally, the distribution of a decedent's personal property is controlled by the laws of the decedent's domicilary state at the time of death. Jones v. Jones, 285 Ala. 140, 299 So.2d 729 (1974). Having held that the State of Louisiana was the domicile of the decedent at the time of his death, the trial court was correct in applying Louisiana law to the distribution of the decedent's estate.
For all of the foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES, ALMON, SHORES and STEAGALL, JJ., concur.
BEATTY, J., dissents.
BEATTY, Justice (dissenting):
Although the majority relies on a military service presumption in its opinion, that opinion appears to me to be based upon the majority's belief that Nora was not mentally competent to choose his place of domicile. The rule in this regard is as follows:
"The mere fact that a person is of partially unsound mind does not necessarily preclude him from establishing his domicile, as the question must depend entirely on the extent to which his reason has been impaired; in general, it may be stated that but a comparatively slight degree of understanding is required in order that his action may be recognized. However, an adult person who has become a mental imbecile, or who has been judicially declared insane, is incapable of a voluntary change of domicile, and therefore retains the domicile which he had when he became insane, unless it is changed by some competent or authorized person or tribunal, or until the restoration of his sanity...." (Footnotes omitted.) (Emphasis added.)
28 C.J.S. Domicile, § 12(e) at 27 (1941).
Nora was never judicially declared insane; furthermore, he was not a "mental *19 imbecile." He carried on conversations with other people, helped the Turners with yard and household chores, attended church services, shopped for his own clothes, took care of his own money, and administered his own medication. In addition, Nora expressly stated his desire to remain with the Turners in Alabama and not to return to Louisiana except to visit. This was a clear choice of Alabama as his domicile, the place where he lived for 36 years. Moreover, Nora had a sufficient degree of understanding to choose his domicile.
Since all of the facts support the position that Nora was domiciled in Alabama, the trial court erred in finding that Louisiana was Nora's domicile and in applying Louisiana law to the distribution of his estate.