MOORE, Judge.
Richard E. Weith ("the husband") appeals from a judgment entered by the Baldwin Circuit Court ("the trial court") divorcing him from Lydia Dianne Weith ("the wife") to the extent that it divided the parties' property. We dismiss the appeal.
Facts and Procedural History
On April 21, 2015, the wife filed a complaint seeking a divorce from the husband. The wife alleged, among other things:
"The [wife] is a bona fide resident citizen of Baldwin County, Alabama, and has been such for over six months preceding the filing of this complaint. The [husband] is a resident citizen of the State of Missouri. The [husband] has numerous contacts with the State of Alabama and owns a one-half interest in a home located in Lillian, Baldwin County, Alabama. The remaining one-half interest in said home is owned by the [wife]."
On May 21, 2015, the husband answered the complaint, admitting that jurisdiction was proper in the trial court.
At the trial, the wife testified that the parties had met in 1999, that they had entered into a relationship, and that, in 2000, she had moved in with the husband, who was living in a house that he owned in *717 Missouri ("the Missouri house"). According to the wife, she had moved out of the Missouri house in 2005 and the parties had remained separated from then until 2007, at which time she moved back in with the husband, who was still living in the Missouri house. The parties were married on April 27, 2012, and, thereafter, they continued to live in the Missouri house together.
The wife testified that she had retired from her employment on July 30, 2013, and that the husband had planned to retire two years after her retirement. The wife testified that, at some point during the marriage, the parties had begun discussing purchasing a "secondary home" in Alabama. According to the wife, the parties had intended on staying in Missouri during the summer months and traveling to Alabama during the winter months.
On September 26, 2014, the parties bought a house in Lillian, Alabama ("the Lillian house"). The Lillian house was titled in both parties' names. The wife testified that, although she had not considered divorcing the husband at that time, she had taken steps to establish residency in Alabama, such as obtaining an Alabama driver's license, in order to procure less costly insurance and to pay lower taxes on the Lillian house. According to the wife, the parties had agreed that the wife would alternate months between the Lillian house and the Missouri house until she got the Lillian house "ready." She testified that she had planned to spend at least half her time at the Lillian house.
The wife testified that, in April 2015, she had been staying at the Lillian house and working on getting the house ready. According to the wife, she and the husband had planned for the husband to come to the Lillian house later that month for their anniversary. However, according to the wife, the husband had telephoned her in early April and had told her to "get [her] ass back [to Missouri] now." She testified that the husband had wanted her to travel back to Missouri to make some arrangements for their dog, but, she said, she did not think it made sense for her to travel back to Missouri just to return to Alabama for their anniversary later that month. According to the wife, the husband had telephoned her a second time and had told her not to come back to Missouri, that he was going to see an attorney, and that she should also see an attorney because, he had said, "this is just not working." The wife testified that she had traveled back to Missouri and that, upon arriving at the Missouri house, had found that all the door locks had been changed. She testified that, because the husband had changed the locks, she had known he was serious about filing for a divorce, so, she said, she had filed for a divorce in the trial court before the husband could file. She testified that she "became residency [sic] at that time." She also testified, however, that she had been "a Baldwin County resident for six months immediately preceding the filing of [the] complaint for divorce."
During the trial, the husband's attorney pointed out to the trial court that it appeared that the trial court lacked subject-matter jurisdiction because the wife had not intended to reside in Alabama until immediately before she filed her divorce complaint. The trial court overruled the husband's objection regarding the lack of subject-matter jurisdiction.
On February 22, 2017, the trial court entered a judgment that, among other things, purported to divorce the parties and to divide the parties' property. On March 17, 2017, the husband filed a "Motion to Alter, Amend or Vacate" the judgment; that motion was denied on May 4, 2017. On June 1, 2017, the husband filed his notice of appeal.
*718 Discussion
Although neither party raises the issue whether the trial court had jurisdiction to enter the divorce judgment in light of § 30-2-5, Ala. Code 1975, this court ordered the parties to file letter briefs on that issue. See D.C.S. v. L.B., 84 So.3d 954, 957 (Ala. Civ. App. 2011) (" ' "[T]his Court is duty bound to notice ex mero motu the absence of subject-matter jurisdiction." ' " (quoting Baldwin Cty. v. Bay Minette, 854 So.2d 42, 45 (Ala. 2003), quoting in turn Stamps v. Jefferson Cty. Bd. of Educ., 642 So.2d 941, 945 n.2 (Ala. 1994) ) ). Both parties submitted briefs.
Section 30-2-5 provides that, "[w]hen the defendant [in a divorce action] is a nonresident, the other party to the marriage must have been a bona fide resident of this state for six months next before the filing of the complaint, which must be alleged in the complaint and proved." "If the residency requirements set forth in § 30-2-5 are not met, the trial court lacks jurisdiction over the divorce action." Alsaikhan v. Alakel, 173 So.3d 925, 927 (Ala. Civ. App. 2015). "The parties cannot by agreement confer jurisdiction." Hilley v. Hilley, 275 Ala. 617, 619, 157 So.2d 215, 218 (1963).
"It is well settled that, for the purposes of § 30-2-5, residence is equivalent to domicile. Ex parte Ferguson, 15 So.3d 520, 522 (Ala. Civ. App. 2008) ; Skieff v. Cole-Skieff, 884 So.2d 880, 883 (Ala. Civ. App. 2003) ; Livermore v. Livermore, 822 So.2d 437, 442 (Ala. Civ. App. 2001) ; and Webster v. Webster, 517 So.2d 5, 7 (Ala. Civ. App. 1987).
" ' " 'Domicile is defined as residence at a particular place accompanied by an intention to stay there permanently, or for an indefinite length of time.' Nora v. Nora, 494 So.2d 16, 17 (Ala. 1986). A person's domicile continues until a new one is acquired. Id." '
" Ex parte Ferguson, 15 So.3d at 522 (quoting Fuller v. Fuller, 991 So.2d 285, 290 (Ala. Civ. App. 2008) ). Black's Law Dictionary 592 (10th ed. 2014) defines 'domicile' as '[t]he place at which a person has been physically present and that the person regards as home; a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere.' This court has noted that when a person lives in one location, his or her intent to return to another location is of primary importance in determining the issue of the person's domicile. Livermore v. Livermore, 822 So.2d at 442 (citing Andrews v. Andrews, 697 So.2d 54, 56 (Ala. Civ. App. 1997), and Jacobs v. Ryals, 401 So.2d 776, 778 (Ala. 1981) ).
"With regard to principles governing the concept of domicile, our supreme court has stated:
" ' "[A] domicile, once acquired, is presumed to exist until a new one has been gained 'facto et animo' ... And in order to displace the former, original domicile by the acquisition of one of choice, actual residence and intent to remain at the new one must concur. 'Domicile of choice is entirely a question of residence and intention, or, as it is frequently put, of factum and animus.' ...
" ' "A change of domicile cannot be inferred from an absence, temporary in character, and attended with the requisite intention to return. To the fact of residence in the new locality there must be the added element of the animus manendi before it can be said that the former domicile has been abandoned. The intention to return is usually of controlling *719 importance in the determination of the whole question....
" ' "... As a general proposition a person can have but one domicile, and when once acquired is presumed to continue until a new one is gained facto et animo, and what state of facts constitutes a change of domicile is a mixed question of law and fact....
" ' "One who asserts a change of domicile has the burden of establishing it.... And 'where facts are conflicting, the presumption is strongly in favor of an original, or former domicile, as against an acquired one,' etc. ..." '
" Jacobs v. Ryals, 401 So.2d at 778 (quoting Ex parte Weissinger, 247 Ala. 113, 117, 22 So.2d 510, 513-14 (1945) )."
Alsaikhan, 173 So.3d at 928.
In Hamilton v. Hamilton, 12 So.3d 1236 (Ala. Civ. App. 2009), this court considered whether the wife in that case was domiciled in Alabama for purposes of § 30-2-5. This court stated that the evidence indicated that the wife and the parties' daughter had moved from Georgia to Alabama and that the wife had filed for a divorce from the husband approximately 11 months after moving to Alabama.
"Upon relocating, the wife and the daughter began residing in a vacation home that is owned by the husband. The wife testified that the husband had not objected to her relocating or to her bringing the child with her. The wife also testified that, since she and the daughter had relocated in June 2007, she had enrolled the daughter in school, she had been issued an Alabama driver's license, she had been issued an Alabama motor-vehicle tag, she had registered to vote, and she had purchased a retail clothing business ...."
12 So.3d at 1238. This court concluded that the wife in Hamilton had presented "substantial evidence indicating that she intended to stay in Alabama permanently or, at the very least, for an indefinite length of time." 12 So.3d at 1239.
The present case, however, is distinguishable from Hamilton. In this case, the wife testified that she had obtained an Alabama driver's license after the parties purchased the Lillian house in order to procure less costly insurance and to pay lower taxes on the Lillian house. She testified that the parties had agreed that she would spend alternating months in Missouri and Alabama in order for her to get the Lillian house ready. She further testified that, while she was in Alabama during the month of April, the husband had informed her that he wanted a divorce. Thereafter, the wife returned to Missouri and discovered that the husband had changed the locks on the doors of the Missouri house, which prompted the wife to travel back to Alabama and file for a divorce. The evidence in this case, unlike the evidence in Hamilton, indicates that the wife had not intended to stay in Alabama permanently or for an indefinite length of time for the requisite period; instead, her own testimony indicates that she had intended to return to Missouri up until the month that she filed for a divorce.
"When a person with capacity to acquire a domicil of choice has more than one dwelling place, his domicil is in the earlier dwelling place unless the second dwelling place is his principal home." Restatement (Second) of Conflict of Laws § 20 (1971). In Galva Foundry Co. v. Heiden, 924 F.2d 729, 730 (7th Cir. 1991), the United States Court of Appeals for the Seventh Circuit held that, when a party owns residences in two states, that party may not simply change his or her domicile "by changing his [or her] voter registration or his [or *720 her] driver's license, in order to take advantage of changes in tax law or to opt in or out of federal diversity jurisdiction." Furthermore, in Happy Camper Management, LLC v. Ament, Civil No. 15-927 WJ/GBW, June 16, 2016 (D. N.M. 2016) (not selected for publication), the United States District Court for the District of New Mexico held that the fact that the parties in that case owned a vacation home in New Mexico did not negate their "intent to be domiciled in California."
In the present case, the wife unequivocally testified that she had obtained an Alabama driver's license for the sole purpose of taking advantage of lower taxes and less expensive insurance on the Lillian house. The fact that the parties had purchased the Lillian house as a vacation home did not negate the wife's intent to return to the Missouri house. Furthermore, although the wife testified that she had been a resident of Alabama for six months preceding the filing of the complaint for a divorce, our supreme court has held that "[t]he mere statement of the [wife] that she is a resident of the State of Alabama and has been such 'for the length of time required by law' is insufficient to meet the jurisdictional requirement that the [wife] be domiciled in this state, the [husband] not being shown to be domiciled here." Volin v. Volin, 272 Ala. 85, 87, 128 So.2d 490, 491 (1961).
As stated previously, " ' "intention to return is usually of controlling importance in the determination of the whole question," ' " Alsaikhan, 173 So.3d at 928 ; here, the wife's own testimony indicates that she had intended to return to Missouri up until the month that she filed for a divorce. We, therefore, cannot conclude that the wife overcame the presumption in favor of her original Missouri domicile. Id. Accordingly, we conclude that the wife failed to prove the residency requirement set forth in § 30-2-5. "A judgment rendered without proof of this requirement is void for want of subject matter jurisdiction." Chavis v. Chavis, 394 So.2d 54, 55 (Ala. Civ. App. 1981). Because a void judgment will not support an appeal, we dismiss the appeal, albeit with instructions to the trial court to set aside its void divorce judgment. See, e.g., Paulk v. Paulk, 249 So.3d 521 (Ala. Civ. App. 2017).
The requests for attorney fees filed by both the husband and the wife are denied.
APPEAL DISMISSED WITH INSTRUCTIONS.
Thompson, P.J., and Donaldson, J., concur.
Pittman and Thomas, JJ., recuse themselves.