EX MERO MOTU
THIGPEN, Judge.
This court’s original opinion, dated August 21,1992, is withdrawn, and the following is substituted therefor:
This case involves allegations of sexual abuse which resulted in the father’s removal from the home, and the daughter (C.E.D.) being alleged dependent by the State Department of Human Resources (DHR).
DHR filed a petition for custody of C.E.D. on June 18, 1991, after C.E.D. and her three adult sisters reported sexual abuse by their father. C.E.D. requested that she be removed from the home due to emotional pressure from her parents and other family members. A hearing was set for July 8, 1991. The parents filed a mo *407 tion for a continuance on July 1, which was granted, and the case was set for July 12. On July 11, the parents moved for a second continuance, which was denied. The trial court, in denying the motion, stated, “This is a custody matter alleging dependency and serious sexual abuse and should therefore be dealt with expeditiously.” On July 12, the trial court declared C.E.D. to be a dependent child and removed the father from the home except for times when C.E.D. was away from the home.
The parents appeal, claiming that the denial of the second continuance resulted in a denial of their right to due process as they did not have adequate time they say, to gather and depose witnesses in order to prepare an adequate defense; that the trial court erred in admitting evidence of the father’s prior psychological treatment; and that the evidence was insufficient to support a finding that C.E.D. was dependent.
The first issue raised by C.E.D.’s parents is whether the trial court erred to reversal in refusing to allow them a second continuance. The record reveals that the parents received notice of the dependency hearing on June 27, and that it was held on July 12, allowing the parents fifteen calendar days, but only nine working days for preparation.
We find Ala.Code 1975, § 12-15-68, to be controlling. This section reads:
“Continuances shall be granted by the court only upon a showing of good cause and only for so long as it is necessary, taking into account not only the request or consent of the prosecutor or of the child, but also the interest of the public in the prompt disposition of cases and whether the child is being detained.”
The parents cite Payne v. State Department of Human Resources, 532 So.2d 1263 (Ala.Civ.App.1988), to support their argument that the trial court abused its discretion in refusing to grant a second continuance. We find Payne to be distinguishable from the case at hand.
In Payne, the DHR presented school records of a child who was the subject of a Child in Need of Supervision petition because the child was allegedly uncontrollable at school. The child’s guardian ad li-tem was allowed only 45 minutes to review the school records; the guardian requested a continuance, which was denied. During the hearing, the guardian objected to the introduction of evidence on the grounds of lack of notice or opportunity to examine the evidence, and he continued to renew his motion for continuance.
The instant case is distinguishable from Payne in that the record reflects that the parents did not object to the denial of the continuance:
“THE COURT: Anything else?
“MR. SHIELDS: This other motion that I have is a motion for continuance ...
“THE COURT: ... I have read it. And the motion is denied at this time, because a juvenile proceeding, and in particular a custody proceeding, in expedited time periods apply in these cases, so that motion to continue is denied.
“MR. SIMON: Your Honor, I would like to put one thing on the record concerning that motion. The basis for it, as asserted by Mr. Shields, ... was that this hearing was scheduled for Monday, it’s now been rescheduled for a Friday, and that it did not give him ample time to get certain experts to come in and testify. Now, it’s my understanding, and Mr. Shields can correct me if I’m wrong; the three psychiatrists, therapists or psychologists who are relevant in this case are Dr. Becker, Ms. Jan Neverdahl and Dr. Fuller. And Ms. Neverdahl is here and present. Dr. Becker and Dr. Fuller, we have informed and had a conference Monday, a telephone conference, in which Your Honor was on the phone and Mr. Shields was on the phone, if I remember—
“MR. SHIELDS: That’s correct. I believe it was the two of us and Ms. Penry.
“MR. SIMON: That’s right. I’m sorry, it wasn’t Your Honor, it was Ms. Brownie Penry, who is your secretary. And in *408 that conference it was stated that we would be happy if Mr. Shields — would take testimony by telephone — tell these experts to be present and around their telephone and they could be sworn and the testimony could be taken telephoni-cally and we still could allow that to be done.
“MR. SHIELDS: Judge, if I could— when I talked with David [an attorney representing DHR], who was very accommodating with me in this matter because of the quickness of the setting. And I had asked him if he would issue the subpoenas to the individuals, which he did, and it’s my understanding that they have been served. My understanding is, also, that both Dr. Becker and Dr. Fuller indicated that they would not comply with us because of such short notice and would not come to Court. Our position is that fourteen days from the service is what we’re talking about and is clearly insufficient time for me to get them prepared_ Our local rule in Mobile requires ten days notice — I had five days from the (first) continuance and, therefore, feel like I am not completely prepared, but will abide by Your Honor's ruling.
“THE COURT: Well, I’m not going to grant the motion for continuance. I will, however, at your request, if you would like for me to do so today, to treat this as I would a 72-hour hearing issue on the pick up order and, that is, not make a final adjudication on the case until some later date. And I’ll be happy to do that.
“MR. SHIELDS: Well, since the child is not in a detained status, we would ask that it be [treated] as a merit hearing for evidentiary purposes.
“THE COURT: All right. That’s fine, then.”
From the record and particularly the above colloquy, it appears that the parents’ counsel acquiesced in the denial of the motion for continuance, and requested that the proceeding be treated “as a merit hearing for evidentiary purposes.” Accordingly, this issue is not proper for appellate review. See Copeland v. Williamson, 402 So.2d 932 (Ala.1981).
Furthermore, the trial judge in his discretion was aware that this case involved allegations of sexual abuse. The record revealed that the trial court granted the first continuance, but denied the second one due to the nature of the case and the apparent urgency in its disposition. Although the parents argued that C.E.D.’s case was not an emergency, in light of the facts alleged in the dependency petition it was well within the trial court’s discretion to decide that this case should be dealt with in an expeditious manner and to deny the second continuance. Landers v. Association for Guidance, Aid, Placement & Empathy of North Alabama, Inc., 472 So.2d 1055 (Ala.Civ.App.1985).
The next issue is whether the trial court’s admission of testimony regarding the father’s prior psychological treatment constitutes reversible error. Specifically, the record reveals that one of C.E.D.’s older sisters (the witness) stated:
“[The mother] told [the witness] that [the father] had went to a psychiatrist and that there was nothing they could do for him because he admitted — that he had a problem and that’s the only thing that they could help him with and he never admitted that he had a problem. And that he would swear that he would quit drinking and go to AA_”
At the beginning of this witness’s testimony, the record reflects that the parents made a continuing objection as to the materiality of her testimony, as it was expected to describe experiences from fifteen years earlier when the father allegedly abused this witness sexually. On appeal, however, the parents argue that this testimony is hearsay because it is testimony by a witness in court as to statements made out of court by a physician (psychiatrist).
First, the record does not reveal that the mother told the witness what the psychia *409 trist said to the mother, but rather what the mother said about the father’s treatment.
More importantly, a hearsay objection was not properly made concerning this testimony. The parents objected that the witness was non-responsive to the question posed to her. From what we can ascertain from the record, the question that the witness first answered concerned the mother’s reaction when the witness told the mother that the father had sexually abused the witness. The next question asked of the witness was whether the mother and the witness broached that subject again after that day. The witness described her conversation with the mother regarding the father’s psychological treatment. The witness’s answer, therefore, was not non-responsive to the question posed to her. Additionally, the record showed that the mother later corroborated the witness’s testimony about the father’s psychological and alcohol-related treatment without objection. We fail to see any reversible error in the admission of the witness’s testimony.
Finally, the parents argue that the evidence was insufficient to support a finding of dependency.
The record revealed that C.E.D.’s three sisters testified that they were each sexually abused by the father on separate, nonrecurring occasions. Later, C.E.D. attempted suicide partly because of her parents’ disapproval of her boyfriend, which contributed to the end of her relationship with him. Following the suicide attempt, C.E.D. underwent counselling. Subsequently, the sexual abuse between the father and C.E.D. occurred. Following that abuse, C.E.D. confided in one of her sisters, who informed C.E.D.’s counsellor, who in turn contacted DHR. C.E.D. advised a DHR social worker that she wanted to be removed from the home due to emotional pressures, but she later allegedly changed her mind according to an affidavit submitted to the court.
According to the record, although the mother was aware of the father’s abuse of the sisters, she supported the father throughout these proceedings. The evidence showed that the father was undergoing counselling and was attending Alcoholics Anonymous meetings. The testimony revealed that the father was quiet and humble. Neither the sisters nor the mother blames the father for his actions, because they feel that he is suffering from some sort of illness. Allegedly, the father has stopped drinking.
Three of the sisters testified that they were confident that C.E.D. would not be in “physical danger” of abuse by the father again. A fourth, younger sister still lived at home at the time of trial. One of the adult sisters felt that C.E.D. should be removed from the home because of the mother. The mother was also in therapy, and her testimony revealed that as a security precaution, she does not leave the children alone with the father, and she has installed locks on- the bedroom and bathroom doors for the children’s use, if necessary.
The counsellor testified that the mother was manipulative and that she minimized the incidence of abuse. The counsellor advised that it would not be in C.E.D.’s best interests for the father to be in the home, even though the child was attached to both parents. Other evidence revealed that C.E.D. was under extreme emotional pressure from her mother. C.E.D.’s social worker testified that the family was undergoing counselling, but advised that foster care would be appropriate.
It is well settled that the primary concern in temporary legal custody cases of alleged dependency is always the best interests of the child. McKinney v. Alabama Department of Pensions & Security, 475 So.2d 568 (Ala.Civ.App.1985). Ala. Code 1975, § 12-15-1(10), in part, classifies a dependent child as one who is mentally or emotionally abused by the parents or is without proper parental care and control necessary for his well-being due to the faults or habits of his parents, or who, for *410 any other cause is in need of the care and protection of the state.
When evidence is presented to a trial court ore tenus, that court’s findings are presumed correct and will not be reversed unless the evidence is so insufficient as to indicate that the findings are plainly and palpably wrong. Odom v. State Department of Human Resources, 562 So.2d 522 (Ala.Civ.App.1990). The evidence describes a very unusual and unhealthy environment for C.E.D. The evidence of a pattern of sexual abuse of the daughters, and the installation of security measures, along with testimony regarding the mother’s infliction of emotional pressure on C.E.D., all play a part in our decision that the evidence presented to the trial court is sufficient to support a finding that C.E.D. is a dependent child.
Therefore, as indicated above, this case is due to be, and it is hereby, affirmed.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
ROBERTSON, P.J., and RUSSELL, J., concur.