JOHNSTONE, Justice.
We granted R.E.C. and A.T.C.’s petition for a writ of certiorari to determine whether the Court of Civil Appeals, in reversing the judgment of the Geneva County Juvenile Court, reweighed the evidence, substi *274 tuted the judgment of that appellate court for the judgment of the juvenile court, and thereby violated the ore terms rule. We reverse and remand.

I. Facts, Procedural and Substantive

On June 7, 2001, after removing R.C., a seven year old boy; S.C., a five year old boy; A.C., a three year old girl; and B.C., a two year old boy, from the custody of the parents, R.E.C. and A.T.C., the Geneva County Department of Human Resources (“DHR”) petitioned the Geneva County Juvenile Court for emergency custody of the children on the ground of neglect. On August 8, 2001, finding the children dependent and in need of care, the Geneva County Juvenile Court placed custody of the children with DHR, pending further orders of the court.[1]
On October 10, 2001, DHR moved to suspend visitation between the parents and the children on the ground that DHR was investigating allegations that the parents had sexually abused the children. On October 12, 2001, the juvenile court ordered visitation between the parents and the children suspended pending further order of the court. The same day, the parents moved for the immediate return of their children. The juvenile court conducted a hearing on November 9, 2001. Finding that the children may have been sexually molested by or with the consent of the parents, the juvenile court denied the parents’ motion.
On March 13, 2002, the juvenile court held a hearing with ore tenus testimony and documentary evidence. On March 18, 2002, “[ajfter considering the testimony and evidence the [juvenile] court [found] that it [was] in the best interest of these children that they be returned to the mother.” The juvenile court ordered DHR to develop a safety plan to allow the children to return to their mother’s home within three weeks of the date of the order. The court ordered DHR to include provisions in the safety plan to allow the father to visit the children but not to visit them without supervision.
On April 1, 2002, DHR moved for a stay of the March 18 order and moved to alter, to amend, or to vacate the March 18 order, or, in the alternative, for a new trial. DHR asserted that reunification of children with the parents is not required when the children have been subjected to sexual abuse. DHR argued that it had determined that the children could not be returned safely to the parents. Therefore, DHR could not provide the court with a workable safety plan. The juvenile court denied the motion to alter, to amend, or to vacate its March 18 order or to grant a new trial. The court did not rule on the motion to stay. DHR appealed to the Alabama Court of Civil Appeals.
On appeal, DHR moved for a stay of the March 18, 2002 order. The Court of Civil Appeals “granted a stay ... and ordered the juvenile court to hold an evidentiary hearing and to make a finding as to whether a parent ‘had subjected the ehild[ren] to sexual abuse.’ ” State Dep’t of Human Res. v. R.E.C., 899 So.2d 251, 265 (Ala.Civ.App.2003).
After a May 23, 2002 evidentiary hearing, the juvenile court entered, on May 31, 2002, an order which reads:
“This cause came before the court on directive from the [C]ourt of [C]ivil [A]ppeals for this court to hold an evi-dentiary hearing.... The court heard testimony from Ms. Henderson, Depart *275 ment of Human Resources caseworker, Ms. Shaw of the Child Advocacy Center, Mr. Lilly of the Wiregrass Children’s Home, and Ms. Harrison, Department of Human Resources caseworker.
“The court had previously heard testimony from several witnesses and issued an order dated 3/18/02 directing the Department of Human Resources to return the children under certain guidelines. The testimony in this case from the previous hearing is part of the record as are the records of counselors for the Child Advocacy Center and reports of Mr. Ellis (all as agreed by counsel of the parties) and is considered by the court in the following findings and order:
“Ms. Henderson testified that the foster parents reported the children had been sexually molested by both parents and that she (Ms. Henderson) personally interviewed all three children who were 7, 5 and 3 respectively at the time. The three and five year olds made statements to Ms. Henderson alleging improper sexual contact by the father. The eight year old denied any improper sexual contact but was very defensive. According to Ms. Henderson the eight year old later admitted to Ms. Harrison (another Department of Human Resources caseworker) improper sexual contact by the father, although he later recanted this admission, also to Ms. Harrison. (Ms. Harrison verified this in her testimony). Ms. Henderson testi1 fied that a medical examination revealed no physical evidence of abuse.
“The court also heard from Ms. Shaw of the Child Advocacy Center. She has a masters in counseling and psychology and is certified as a forensic evaluator with numerous hours of continuing education training. She discussed the Child Advocacy Center’s interview process and protocol and how she applied it in this case in interviewing the child [A.C.]. These interviews took place in September of 2001 approximately two weeks after the child’s fourth birthday. She had a total of four interviews over a five week span ending in October. It is her opinion that the children have been abused/molested.
“There is indication from the current counselor (see P. 140, 146, 151 & 152 of the transcript) Mr. Ellis, that the children reported that the foster parents (who first reported the abuse) may have inappropriately encouraged these allegations by offering candy to tell the truth (while possibly implying that the only truth was that the father had molested them). Shortly after the allegations arose the foster parents no longer wanted the children in their home and they never appeared or testified at either hearing.
“M[s]. Harrison testified that at least one child reported to her that the foster parents ha[ve] pulled their hair and forced them to ‘smell their drawers’ when they wet their pants. Ms. Harrison also testified, among other things, that the parents have cooperated fully with the requests and directives of the department and that the children respond to both parents in a loving manner.
“Mr. Lilly of Wiregrass Children’s Home, who is also a therapeutic foster parent testified that he had not seen evidence of acting out, improper sexual acts or other signs that this child, [R.C.,] shows any indication of having been sexually molested.
“The situation in this case is typical and a good example of how difficult child abuse cases can be. For this court to make a definitive finding of sexual abuse it would be forced to do so based almost entirely on the statements of a four year *276 old child who may have been manipulated in a foster setting or by some third party. This, combined with the lack of medical evidence or an adult eye-witness may be why the Geneva County District Attorney’s Office is not investigating and has not filed any charges.
“All in all, although the Child Advocacy Center presented that the children have been exposed to inappropriate sexual contact, and this court is concerned with these allegations, there is not sufficient evidence in light of all the evidence and testimony to establish that the parents or either parent is in fact a perpetrator. In other words, after considering all the evidence this court can not find by a preponderance of the evidence that the parents have sexually molested, or knowingly allowed the sexual abuse of these children. The Geneva County District Attorney’s Office is not investigating these allegations. However, this court finds that there is probable cause to believe that something inappropriate (even if only improper suggestion) has occurred in regard to these children and finds it in the best interest of the children that DHR provide protective services and since the reports indicate the possibility of the father as a perpetrator this court directs the Geneva County Department of Human Resources to submit a safety plan to carefully, and with appropriate counseling and safeguards in place, reintroduce the father to the household. The parents have agreed to such a plan and this court hereby directs the immediate return of the children to the home of the mother with family options and with the father residing outside the homeplace, as agreed by the parents, pending further orders. The court finds further that the above and foregoing is in the best interest of these minor children. The court readopts the findings of its order dated 3/18/02 and incorporates to [sic] same herein.”
On return to remand, DHR argued that the juvenile court abused its discretion when it returned the children to the mother. In an opinion written by Judge Mur-dock, with two other judges concurring in the result and the other two dissenting, the Court of Civil Appeals reversed the judgment of the juvenile court returning the children to their mother’s home. Because, in the original order of the Court of Civil Appeals staying the judgment of the juvenile court and requiring it to conduct a further evidentiary hearing, the Court of Civil Appeals had ordered the juvenile court to “make a finding as to whether ‘a parent had subjected the child[ren] to sexual abuse,’ ” 899 So.2d at 265, and because, pursuant to that mandate and that evidentiary hearing, the juvenile court had found insufficient evidence to support a finding “that the parents or either of them is in fact a perpetrator,” the ultimate reversal by the Court of Civil Appeals implicitly decided that a parent had, in fact, subjected the children to sexual abuse. For this issue the Court of Civil Appeals recognized the ore tenus rule standard of review: that “[a] trial court’s judgment is presumed correct when it is based on ore tenus evidence, and its decision will be set aside only if the record reveals that decision to be plainly and palpably wrong.” 899 So.2d at 267.
The opinion of the Court of Civil Appeals contains a more-than-common number of pages of details of the evidence tending to prove that the father had sexually abused the girl, who was four years old at the time of the hearing; her older brother, who was six at that time; and the oldest brother, who was eight at that time, and that the mother had observed and allowed some of the abuse. All of the sexual-abuse evidence against the parents *277 was hearsay,[2] mostly in multiple layers. First, a DHR worker’s report said that the original foster mother had said that one or more of the children had said that the parents had committed or allowed some acts of sexual abuse. Next, a DHR worker’s report said that the foster parents had said that their own son had said that the children’s father had telephoned the foster residence and had said some explicitly sexual remarks, not further described in the report. Next, reports or ore terms testimony by the two DHR workers and two child advocates from the local child advocacy center said that the girl and her two brothers had said to the makers of the reports that the father and two other men had committed certain acts of sexual abuse and that the girl and the six-year-old boy had said that the mother had observed and allowed some of the abuse. The reports or testimony said also that the six-year-old boy had at various times denied any sexual abuse and eventually had recanted his earner statements that his father had sexually abused him. The reports or testimony said further that the eight-year-old boy had at various times denied any sexual abuse.
The opinion of the Court of Civil Appeals further recounts some countervailing evidence. The report and some “session notes” by a therapist counseling the mother, the six-year-old boy, and the eight-year-old boy, said that both boys had denied any sexual abuse and had accused the original foster mother of coaching them to accuse their father of sexual abuse and that the eight-year-old boy had called the six-year-old and the girl liars for their statements against their parents about sexual abuse. ■ Moreover; medical examinations of the children performed two weeks after they were removed from their parents’ home revealed no- signs of penetration or other evidence of sexual abuse, even though one reported story by the six-year-old boy was that his father had pushed a stick with “branches” on it up that boy’s “butt,” and even though the girl’s reported accusations were that the father and another man had committed acts consistent with penile penetration into her “privates.” Further, the mother of the children denied that she had observed or allowed any sexual abuse or that the father had committed any.
The opinion of the Court of Civil Appeals also recounts circumstantial evidence in the form of the DHR workers’ and child advocates’ opinions that the children were the victims of sexual abuse. These opinions were based on the children’s scores on tests[3] and • responses to questions and were based on statements by the first foster mother to the effect that the girl and her two older brothers masturbated excessively. Countervailing was testimony by the therapist that he
“ ‘ “had not seen or heard anything in his direct counseling over the last four to six weeks to indicate sexual abuse nor has he observed anything to indicate that the children would not be safe with their mother.’ ” ”
899 So.2d at 264. Likewise, one of the DHR workers as well as the therapeutic foster parent who received the children after the first foster parents, the ones whose allegations had precipitated the sexual abuse investigation, had returned the *278 children to DHR and had surrendered their foster parents’ license, each testified that, during the time she or he had worked with all four children, she or he had not personally observed any behavior that would indicate that the children had been sexually abused.
The record contains some evidence of bias in favor of the State by the child advocates. One of them testified that she did not videotape her interviews with a child because “our DA doesn’t like us to.” She testified further that there was a team effort by “DHR, law enforcement, the DA, and our centers ... to come across with the best answers for these children.”
The Court of Civil Appeals relies on the “graphic detail ... [,] the depth of understanding,” and the consistency of what that court characterizes as the “statements” of the four-year-old girl. That court is referring to what the DHR workers or child advocates wrote or testified the girl said rather than to any testimony by the girl herself. That court resolves the conflict between those “statements” and the evidence that the girl was coached to fabricate the statements, this way:
“The suggestion that, somehow, after only 10 days, the foster mother in this case had been able to train this four-year-old girl to tell relative strangers such ‘stories’ is to make a suggestion that strains credulity, especially in light of the other evidence in this record.”
899 So.2d at 269. The Court of Civil Appeals faults the juvenile court for relying more on the ore terms testimony than on the documentary evidence introduced at the evidentiary hearing ordered by the Court of Civil Appeals:
“While, as stated, this court has the utmost respect for the trial court, the fact that so much of the evidence in this case was not presented by way of live testimony at the May 23 hearing may be the source of what we conclude is error on the part of the trial court. We note that A.C., the four-year-old referred to in the trial court’s May 31, 2002, order, was the only one of the children as to whom there was much testimony at the May 23 hearing. Several witnesses discussed some of the statements A.C. had made; none of the witnesses focused significantly on statements made by the other children. Nor was there any recapitulation at the May 23 hearing of the opinions and reports of Henderson, Head, or Ellis.”
899 So.2d at 270. The Court of Civil Appeals resolves the conflicts between and among the children’s purported statements, denials, and recantations and the conflicts between the purported statements of sexual abuse and the personal observations of one of the two DHR workers, the therapist, and the therapeutic foster parent, who did not personally observe indications of sexual abuse while they were working with the children, by adopting the arguments of DHR:
“[Sjexually abused children ... often love their parents and seek to protect their relationship with their parents, even when their parents have hurt them. DHR argues that these children, having once told adults of their abuse, and having been separated from their parents as a result, will not report this abuse again.” *279 ta Motor Corp., 684 So.2d 182, 135 (Ala.1996).”
*278 899 So.2d at 271.

II. Standard of Review

“ ‘On certiorari review, this Court accords no presumption of correctness to the legal conclusions of the intermediate appellate court. Therefore, we must apply de novo the standard of review that was applicable in the Court of Civil Appeals.’ Ex parte Toyo-
*279 Ex parte Helms, 873 So.2d 1139, 1143 (Ala.2003).
“Once a trial court has found that a child is dependent, § 12-15-71, Ala. Code (1975), authorizes the court to make any of a number of dispositions including transferring legal custody to” DHR'. Sanders v. Guthrie, 437 So.2d 1313, 1315-16 (Ala.Civ.App.1983). The trial court may permit a dependent child to remain with his or her parents subject to certain conditions and limitations. § 12-15-71(a)(1), Ala. Code 1975. “In matters concerning child custody and dependency, the trial court’s judgment is presumed correct ... and will not be reversed unless plainly and palpably wrong.” Ex parte T.L.L., 597 So.2d 1363, 1364 (Ala.Civ.App.1992).
“The ore tenus rule provides that a trial court’s findings of fact based on oral testimony ‘have the effect of a jury’s verdict,’ and that ‘[a] judgment, grounded on such findings, is accorded, on appeal, a presumption of correctness which will not be disturbed unless plainly erroneous or manifestly unjust.’ Noland Co. v. Southern Dev. Co., 445 So.2d 266, 268 (Ala.1984). ‘The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses.’ Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986).”
Ex parte Anonymous, 803 So.2d 542, 546 (Ala.2001). “The trial court’s judgment in cases where the evidence is heard ore ten-us will be affirmed, if, under any reasonable aspect of the testimony, there is credible evidence to support the judgment.” River Conservancy Co., L.L.C. v. Gulf States Paper Corp., 837 So.2d 801, 806 (Ala.2002). Accord Clark v. Albertville Nursing Home, Inc., 545 So.2d 9, 13 (Ala. 1989).- “In ore tenus proceedings, the trial court is the sole judge of the facts and of the credibility of the witnesses, and it should accept only that testimony which it considers worthy of belief.” Clemons v. Clemons, 627 So.2d 431, 434 (Ala.Civ.App.1993).
“ ‘Appellate courts do not sit in judgment of disputed evidence that was presented ore tenus before the trial court-’” Ex parte Roberts, 796 So.2d 349, 351 (Ala.2001) (quoting Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996)). “When the evidence in a case is in conflict, the trier of fact has to resolve the conflicts in the testimony, and it is not within the province of the appellate court to reweigh the testimony and substitute its own judgment for that of the trier of fact.” Delbridge v. Civil Serv. Bd. of Tuscaloosa, 481 So.2d 911, 913 (Ala.Civ.App.1985). “[A]n appellate court may not substitute its judgment for that of the trial court. To do so would be to reweigh the evidence, which Alabama law does not allow.” Ex parte Foley, 864 So.2d 1094, 1099 (Ala.2003) (citations omitted).

III. Analysis

DHR seeks to deprive the parents of custody of their children and to keep them out of the parents’ home on the ground, alleged by DHR, that the father has committed, and the mother has knowingly allowed, sexual abuse against the children. The burden is and has been on DHR to prove these allegations. Ex parte Floyd, 550 So.2d 982 (Ala.1989).
The trial court, the juvenile court, considering ore tenus testimony as well as documentary evidence, decided that DHR had failed to carry its burden of proof. This judgment must “be affirmed, if, under any reasonable aspect of the testimony, there is credible evidence to support the judgment.” River Conservancy Co., *280 L.L.C., 837 So.2d at 806 (emphasis added). In reversing the juvenile court in the case now before us, the Court of Civil Appeals necessarily presumed to find utterly incredible the children’s denials of sexual abuse, their recantations of statements about sexual abuse, their charges of the first foster mother’s coaching, the children’s mother’s denials of her allowing or the father’s committing sexual abuse, the results of medical examinations not revealing sexual abuse, and the impressions of some responsible witnesses favorable to the parents. This finding by the Court of Civil Appeals invaded the province of the juvenile court. Clemons, supra. Similarly, in resolving conflicts in the evidence in favor of DHR, the Court of Civil Appeals invaded the province of the juvenile court. Delbridge, supra.
Moreover, in reversing the juvenile court in its returning the children to the mother’s home, the Court of Civil Appeals necessarily held implicitly that the record proves the allegations of sexual abuse as a matter of law. The party bearing the burden of proof is not entitled to judgment as a matter of law unless the record is devoid of substantial countervailing evidence. Ex parte Helms, supra. See First Fin. Ins. Co. v. Tillery, 626 So.2d 1252 (Ala.1993). Substantial evidence is defined by § 12-21-12(d), Ala. Code 1975, as “evidence of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions as to the existence of the fact sought to be proven” and by West v. Founders Life Assurance Co. of Floñda, 547 So.2d 870, 871 (Ala.1989), as “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” The children’s denials, recantations, and detailed charges of the first foster mother’s coaching, together with the children’s mother’s thorough denials of her allowing or the father’s committing sexual abuse, meet these definitions of substantial evidence.
While the safety plan ordered by the juvenile court theoretically conflicts with its finding the evidence of sexual abuse insufficient against the parents, the juvenile court apparently ordered the safety plan through an abundance of caution, and the parents accepted it. They did not cross-appeal the provision for the safety plan.

TV. Conclusion

After reviewing the record according to the ore tenus rule, we conclude that the judgment of the juvenile court is supported by credible evidence and should have been affirmed. The opinion of the Court of Civil Appeals reweighs the evidence, substitutes the judgment of that court for the judgment of the juvenile court, and thereby violates the ore tenus rule. The opinion of the Court of Civil Appeals thereby conflicts with our precedents, cited and quoted above, explaining the ore tenus rule. Accordingly, the Court of Civil Appeals erred in reversing the judgment of the juvenile court. Thus, we reverse the judgment of the Court of Civil Appeals and remand this cause for entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
NABERS, C.J., and HOUSTON, SEE, LYONS, BROWN, HARWOOD, and WOODALL, JJ., concur.
STUART, J., concurs in the result.

. All of the housing and sanitation concerns of DHR have since been remedied to the satisfaction of DHR and the juvenile court.

. The admissibility of this hearsay is not at issue in this certiorari review. ■

. The record reveals that the children themselves did not take these tests. Rather, the first foster mother, the one whose allegations had precipitated the sexual abuse investigation, completed the tests — two per child — at the behest of one of the two child advocates, who did not verify the accuracy of the foster mother’s entries.