PITTMAN, Judge.
K.D. (“the grandfather”), the paternal grandfather of M.L.D. (“the child”), a male child born in November 2009, appeals from a judgment of the Jefferson Juvenile Court, Bessemer Division (“the juvenile court”), insofar as it (1) terminated the parental rights of the child’s father, T.D., and (2) denied the grandfather’s claim seeking custody of the child. We dismiss the grandfather’s appeal insofar as he attempts to challenge the termination of T.D.’s parental rights, and we affirm the judgment of the juvenile court insofar as it denied the grandfather’s claim seeking custody.
The day after the child was born, the Jefferson County Department of Human Resources (“the Jefferson County DHR”) petitioned the juvenile court for a determination that the child was dependent. As grounds, the Jefferson County DHR alleged that the parental rights of the child’s mother, R.R. (“the mother”), had previously been terminated with respect to a sibling of the child; that the juvenile court had removed other siblings of the child from the mother’s custody; that it would not be in the best interest of the child to remain in the mother’s custody; and that, the child having been born out of wedlock, the identity of the child’s father was unknown. Following a shelter-care hearing and a trial, the juvenile court, in May 2010, entered a judgment determining that the child was dependent.
In May 2011, the Alabama Department of Human Resources (“the Alabama DHR”) filed a petition seeking to terminate the parental rights of the child’s parents. The petition alleged that the mother was unable to give the child proper care and that her inability to give the child proper care was unlikely to change in the foreseeable future. The petition further alleged that the Alabama DHR believed that T.D. was the biological father of the child, that T.D. was incarcerated due to his being convicted of manslaughter, that T.D. had not communicated with the child or the Alabama DHR, that T.D. had not sought to establish that he was the biological father of the child, that T.D. was unable to give the child proper care, and that T.D.’s inability to give the child proper care was unlikely to change in the foreseeable future. In August 2011, DNA testing confirmed that T.D. was indeed the biological father of the child.
In October 2011, the grandfather, who is T.D.’s father, filed a motion to intervene in order to seek visitation with, and custody of, the child. In November 2011, the juvenile court granted the grandfather’s motion to intervene and granted him supervised visitation with the child for two hours every other week.
Following a bench trial at which it received evidence ore tenus, the juvenile court, in August 2012, entered a judgment that, among other things, terminated TJD.’s and the mother’s parental rights and denied the grandfather’s claim seeking custody. The factual findings of the juvenile court that are pertinent to the grandfather’s claim seeking custody were that the grandfather wanted the child to know T.D. and, consequently, that, if the grandfather were granted custody, he would not prevent T.D. from having contact with the child despite the termination of T.D.’s parental rights; that, if the grandfather were granted custody, he would not prevent the mother from having contact with the child despite the termination of her parental rights; that the grandfather had no emotional bond with the child; that the grandfather would need assistance in caring for *710 the child; and that the grandfather had health problems that would interfere with his caring for the child. No postjudgment motions were filed. The grandfather timely filed a notice of appeal within 14 days after the entry of the judgment; however, neither T.D. nor the mother filed a notice of appeal. The juvenile court certified that the record was adequate for appellate review.
Because the juvenile court received evidence ore tenus, our review is governed by the following principles:
“ ‘The trial court’s judgment in cases where the evidence is heard ore tenus will be affirmed, if, under any reasonable aspect of the testimony, there is credible evidence to support the judgment.’ River Conservancy Co., L.L.C. v. Gulf States Paper Corp., 837 So.2d 801, 806 (Ala.2002). Accord Clark v. Albertville Nursing Home, Inc., 545 So.2d 9, 13 (Ala.1989). ‘In ore tenus proceedings, the trial court is the sole judge of the facts and of the credibility of the witnesses, and it should accept only that testimony which it considers worthy of belief.’ Clemons v. Clemons, 627 So.2d 431, 434 (Ala.Civ.App.1993).
“ ‘ “Appellate courts do not sit in judgment of disputed evidence that was presented ore tenus before the trial court....” ’ Ex parte Roberts, 796 So.2d 349, 351 (Ala.2001) (quoting Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996)). ‘When the evidence in a case is in conflict, the trier of fact has to resolve the conflicts in the testimony, and it is not within the province of the appellate court to reweigh the testimony and substitute its own judgment for that of the trier of fact.’ Delbridge v. Civil Serv. Bd. of Tuscaloosa, 481 So.2d 911, 913 (Ala.Civ.App.1985). ‘[A]n appellate court may not substitute its judgment for that of the trial court. To do so would be to reweigh the evidence, which Alabama law does not allow.’ Ex parte Foley, 864 So.2d 1094, 1099 (Ala.2003) (citations omitted).”
Ex parte R.E.C., 899 So.2d 272, 279 (Ala.2004). “ ‘ “The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses.” ’ ” Id. (quoting Ex parte Anonymous, 803 So.2d 542, 546 (Ala.2001), quoting in turn Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986)).
Most of the grandfather’s brief to this court is devoted to challenging the termination of T.D.’s parental rights. However, this court has held that a relative of a parent does not have standing to challenge the termination of that parent’s parental rights. See, e.g., B.H. v. Marion Cnty. Dep’t of Human Res., 998 So.2d 475, 477-78 (Ala.Civ.App.2008). In B.H., we stated:
“We will first address the maternal great-aunt’s appeal insofar as it attempts to attack the judgment terminating the mother’s parental rights in case number JU-07-13.04. See D.M. v. Walker County Dep’t of Human Res., 919 So.2d 1197, 1205-06 (Ala.Civ.App.2005) (holding that an aunt seeking custody of a dependent child could not assert the rights of the parents, whose rights were terminated, on appeal from the denial of her custody petition); see also State v. Property at 2018 Rainbow Dr., 740 So.2d 1025, 1027 (Ala.1999) (indicating that standing is a jurisdictional prerequisite). ‘Standing ... turns on “whether the party has been injured in fact and whether the injury is to a legally protected right.” ’ Property at 2018 Rainbow Dr., 740 So.2d at 1027 (quoting Romer v. Board of County Comm’rs of the County of Pueblo, 956 P.2d 566, 581 (Colo.1998) (Kourlis, J., dissenting)). *711 The maternal great-aunt lacks standing to appeal from the termination judgment because that judgment did not result in an injury in fact to any of the maternal great-aunt’s legally protected rights. Only the mother’s rights were impacted by the termination judgment, and only she could make the arguments asserted by the maternal great-aunt regarding the termination judgment — i.e., whether the appropriate quantum of evidence established the child’s dependency and whether the juvenile court erred by determining that there existed no viable alternatives to the termination of the mother’s parental rights. DM., 919 So.2d at 1206. We therefore dismiss the maternal great-aunt’s appeal from the termination judgment, and we will not address her arguments regarding that judgment in this opinion. Id.”
998 So.2d at 477-78 (second emphasis added). In the present case, consistent with B.H., we conclude that the termination of T.D.’s parental rights did not result in an injury in fact to any of the grandfather’s legally protected rights and that, therefore, the grandfather does not have standing to challenge the judgment of the juvenile court insofar as it terminated T.D.’s parental rights. Consequently, we will not consider the grandfather’s arguments challenging that aspect of the juvenile court’s judgment.[1] See B.H.
Although most of the grandfather’s brief is devoted to challenging the termination of T.D.’s parental rights, his brief also challenges the juvenile court’s factual findings regarding him, which can be construed as challenging the denial of his claim seeking custody of the child. The grandfather has standing to challenge the denial of his claim seeking custody, see B.H., 998 So.2d at 478 (“The maternal great-aunt does, however, have standing to appeal the denial of her petition for custody... .”), and, therefore, we will consider his challenge to the juvenile court’s findings of fact regarding him.
The grandfather first argues that the evidence does not support the juvenile court’s finding that, if he were granted custody of the child, he would not prevent T.D. and the mother from having contact with the child because, the grandfather says, he testified that, if the juvenile court granted him custody and ordered him not to allow T.D. and the mother to have contact with the child, he would prevent such contact. The grandfather did indeed testify to that effect. However, the grandfather also testified that he wanted T.D. to be a part of the child’s life, that he wanted the child to know T.D., and that the grandfather had known the mother for three or four years. In addition, in a written report evaluating the suitability of the grandfather’s apartment for the child, which was written by a Jefferson County DHR supervisor and caseworker and was introduced into evidence, the Jefferson *712 County DHR supervisor and caseworker reported ■ that the grandfather had told them that “[the grandfather] want[ed the child] to know his mother [and] father ... and not be denied ... this opportunity.” The Jefferson County DHR employees also reported that the grandfather had told them that “once [T.D.] was released from prison ... [the grandfather] would do whatever the court order stated[;] however[,] he does want [T.D.] to have a relationship with [the child].”
Based on the evidence indicating that the grandfather wanted T.D. and the mother to have contact with the child and its observation of the grandfather’s demeanor when he testified, the juvenile court could reasonably have found that the grandfather’s testimony was not credible insofar as he testified that, if he were granted custody and ordered to prevent T.D. and the mother from having contact with the child, he would obey that order. See Ex parte R.E.C., supra. Accordingly, we conclude that the evidence supports that finding of the juvenile court.
The grandfather also argues that the evidence does not support the juvenile court’s finding that he did not have a bond with the child because, he says, (1) he testified that, at his last visit with the child, the child had run up to him, had given him a hug, had called him “granddaddy,” and had asked to go home with the grandfather; and (2) the Jefferson County DHR caseworker who supervised the grandfather’s visits testified that the grandfather had played with the child during those visits and that the grandfather’s interaction with the child during those visits was appropriate. However, the Jefferson County DHR caseworker who supervised the grandfather’s visits also testified that a visit between the grandfather and the child that was scheduled for February 11, 2012, had to be canceled because the child refused to leave the foster parent on that occasion. She also testified that the child was reluctant to leave the foster parent for the visit on February 25, 2012, although the child did eventually leave the foster parent and visit with the grandfather on that occasion. Based upon the evidence before it and its observation of the grandfather’s demeanor when he testified, the juvenile court could reasonably have found that the grandfather’s testimony was not credible insofar as it related to his bond with the child. See Ex parte R.E.C., supra. Therefore, we conclude that the evidence supports the juvenile court’s finding that the grandfather did not have a bond with the child.
Finally, the grandfather argues that the evidence does not support the juvenile court’s findings that he would need assistance in caring for the child and that he has health problems that would interfere with his caring for the child. The grandfather testified that he had suffered a knee injury, that he had suffered a back injury that required surgery, and that he is disabled. The Jefferson County DHR caseworker who supervised the grandfather’s visits with the child testified that she had observed the grandfather walking with a cane and that the child was extremely active. She further testified that, on the one occasion the grandfather’s visit with the child was at a park, the child had run and the grandfather’s wife had run after the child but the grandfather had not. The evidence also established that the grandfather’s wife works from 10:00 a.m. until 7:00 p.m. and that, consequently, there would be substantial periods when she would not be available to assist the grandfather in caring for the child. Although the grandfather testified that, if he were granted custody, he would not put the child in day care for the first three months so that he could bond with the child, he testified that, after the first three *713 months, he would put the child in day care. Accordingly, we conclude that the evidence supports the juvenile court’s findings that the grandfather would need assistance in caring for the child and that he has health problems that would interfere with his car-ipg for the child. Therefore, we affirm the judgment of the juvenile court insofar as it denied the grandfather’s claim seeking custody of the child.
APPEAL DISMISSED IN PART; AFFIRMED.
THOMPSON, P.J., and THOMAS and DONALDSON, JJ., concur.
MOORE, J., concurs in the result, without writing.

. T.D. has filed what purports to be an ami-cus curiae brief in which he also challenges the termination of his parental rights. However, T.D. does not have standing to make that challenge because he did not timely file a notice of appeal, which is a jurisdictional prerequisite. See Rule 28(C), Ala. R. Juv. P. ("Written notice of appeal shall be filed within 14 days of the date of the entry of order or judgment appealed from, whether the appeal is to an appellate court or to the circuit court for trial de novo.”); and A.J. v. Cullman Cnty. Dep't of Human Res., 112 So.3d 51, 52 (Ala.Civ.App.2012) (" ' "The timely filing of [a] notice of appeal is a jurisdictional act.” ' ” (quoting Kennedy v. Merriman, 963 So.2d 86, 88 (Ala.Civ.App.2007), quoting in turn Rudd v. Rudd, 467 So.2d 964, 965 (Ala.Civ.App.1985))). Therefore, we will not consider the arguments in T.D.’s brief. The Alabama DHR has moved to strike T.D.’s brief on other grounds. We deny that motion as being moot.