THOMAS, Judge.
R.G. gave birth to A.C. (“the daughter”) in December 2011. The daughter tested positive for cocaine at birth. K.R., R.G.’s aunt, adopted the daughter at that time. R.G. gave, birth to C.G. (“the son”) in September 2013, and, shortly afterward, the Shelby County Department of Human Resources (“DHR”) received.a report alleging that R.G. had been abusing drugs and neglecting the son,, and, in January 2014, it received a report alleging that K.R. had been hospitalized after overdosing on Valium and that she was unable to care for the daughter.
The Shelby Juvenile Court adjudicated the daughter and the son (“the children”) dependent and awarded their custody to DHR (case number JU-13-548.01 and case number JU-14-274.01). DHR first placed the children in foster care, and, later, it placed them with K.R.; however K.R. and C.M., K.R.’s boyfriend, absconded with the children and concealed their whereabouts from DHR from March 2014 until December 2015. In the meantime, L.M., who is the appellant and the adult daughter of C.M., filed in the-juvenile , court petitions (case number JU-13-548.03 and case number JU-14-274.02), seeking custody of the children. L.M., as explained in more detail infra, is a cousin of both R.G and K.R. In December 2015 K.R. died from a drug overdose,- the location of the children was revealed to DHR, the daughter disclosed that she had been sexually abused, and the children were temporarily placed iri the “Kirksey home” before being returned to foster care.
A total of nine actions were filed in the juvenile court. Five actions were filed by various parties regarding the son: case number JU-13-548.01, case number JU-13-548.02 (filed by K.R., who is deceased), *534 case number JU-13-548.03, case number JU-13-548.04, and case number JU-13-548.05 (a termination-of-parental-rights action filed by DHR). Four actions were filed by various parties regarding the daughter: case number JU-14-274.01, case number JU-14-274.02, case number JU-14-274.03, and case number JU-14-274.04 (a termination-of-parental-rights action filed by DHR). The juvenile court consolidated the actions, and, on April 20, 2016, it entered one judgment in seven of the actions, but not in the termination-of-parental-rights actions. Ultimately, the judgment was certified as final, pursuant to Rule 54(b), Ala. R. Civ. P.[1] The juvenile court concluded that L.M. is the children’s cousin;[2] however, it denied L.M.’s custody petitions, noting that L.M. had had limited contact with the children. On May 3, 2016, L.M. filed timely notices of appeal. This court consolidated appeal number 2150658, regarding the son, and appeal number 2150659, regarding the daughter.
L.M. argues that she is a relative entitled to priority over a nonrelative in considering an award of custody of the children, and she argues that DHR “deliberately sabotaged” her ability to establish a relationship with the children. Thus, because she contends on appeal only that the juvenile court erred by denying her petitions for custody of the children, our review of these appeals is limited to issues arising from case number JU-13-548.03 (L.M.’s petition for custody regarding the son) and case number JU-14-274.02 (L.M.’s petition for custody regarding the daughter).[3] See Rogers & Willard, Inc. v. Harwood, 999 So.2d 912, 923 (Ala. Civ. App. 2007) (“This court will not consider on appeal issues that are not properly presented and argued in brief.”).
“ ‘In matters concerning child custody and dependency, the trial court’s judgment is presumed correct on appeal and will not be reversed unless plainly and palpably wrong.’ Ex parte T.L.L., 597 So.2d 1363, 1364 (Ala. Civ. App. 1992); see also Ex parte R.E.C., 899 So.2d 272, 279 (Ala. 2004). Additionally, in Ex parte Anonymous, 803 So.2d 542 (Ala. 2001), the Alabama Supreme Court stated:
“ ‘The ore tenus rule provides that a trial court’s findings of fact based on oral testimony “have the effect of a jury’s verdict,” and that “[a] judgment, grounded on such findings, is accorded, on appeal, a presumption of correctness which will not be disturbed unless plainly erroneous or manifestly unjust.” Noland Co. v. Southern Dev. Co., 445 So.2d 266, 268 (Ala. 1984). “The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses.” Hall v. Mazzone, 486 So.2d 408, 410 (Ala. 1986).’
*535 “803 So.2d at 546.”
J.W. v. C.H., 963 So.2d 114, 119 (Ala. Civ. App. 2007).
L.M. argues that, because she is “the only relative resource available,” the juvenile court erred by declining to award custody of the children to her. The goals of the Alabama Juvenile Justice Act, § 12-15-101 et seq., Ala. Code 1975, include “preserv[ing] and strengthening] the family of the child whenever possible” and providing “a preference at all times for the-preservation of the family.” § 12-15-101(b)(1) and (8), Ala. Code 1975. Section 12-15-314(a)(3)c., Ala. Code 1975, provides, in pertinent part, that a willing, fit, and able relative shall have priority for placement or custody over a nonrelative unless the juvenile court finds it not in the best interests of the child. Section 12-15-301(13) defines a “relative” as
“[a]n individual who is legally related to the child by blood, marriage, or adoption within the fourth degree of kinship, including only a brother, sister, uncle, aunt, first cousin, grandparent,. great grandparent, great-aunt, great-uncle, -great great grandparent, niece, nephew, grandniece, grandnephew, or a stepparent.”[4]
L.M. does not contend that the children are her first cousins. L.M. testified that K.R. and a person identified as “D.” are her first cousins. (D. is R.G.’s mother.) Thus, the juvenile court correctly determined that the children are not L.M.’s first cousins; however, it incorrectly determined that' the children are related to L.M. “to the 4th degree of blood relations.” [5] Although the finding that the children were within the fourth degree of kinship to L.M. is error, DHR, the prevailing party, could not have properly filed a notice of appeal regarding that error. “[W]here a judgment is wholly in a party’s favor and there is nothing prejudicial in the judgment no appeal lies to the prevailing party.” Personnel Bd. of Jefferson Cty. v. Bailey, 475 So.2d 863, 865-66 (Ala. Civ. App. 1985). The juvenile court’s error did not prejudice L.M. because its finding that she was related to the children “to the 4th degree of blood relations” was favorable to her position. -We cannot reverse the juvenile court’s judgment based on its erroneous conclusion that L.M. was a “relative” of the children, pursuant to § 12-15-301(13).
Next, L.M. argues that the juvenile court erred by concluding that she was not a suitable custodian because, she says, DHR failed to initiate a proper or adequate investigation regarding her ability to meet the needs of the children. L.M. asserts that DHR actively sabotaged her *536 efforts to build a relationship with the children by, she says, denying her supervised visitation, which had been ordered by the juvenile court, in order to claim that, she was a stranger to the children. Indeed, in a December 12, 2015, shelter-care order, the juvenile court had ordered DHR to. provide supervised visitation between the children.and L.M. The transcript contains the following exchange that took place between the mother’s attorney and ' Star Pope, a DHR employee, at the trial;
“Q; You heard [L.M.] state that she had asked for visitation, and she was told that that was not a good idea, not a possibility. Did you hear her testimony of that.?
“A: Yes, I heard it.
“Q: Do you know who said that to her?
“A: She contacted me and requested visitation. I told her we would address it after the home study. When I did the home study and went , over all the reasons thaLDHR wasn’t supportive of her petition, I informed her that DHR wouldn’t be in agreement with visitation with her at. this point, .that the judge would have to make that decision.
“Q. Was there an order in January granting her visitation with these kids?
“A.vNo. There was an order in December at the shelter care saying that she may haver — it’s not prohibited but not that she was entitled to the visitation and there was an [Individualized Service Plan] in January that addressed it.”
Pope said that she had performed a second home study on L.M.’s home on March 9, 2016. Pope said that the home was adequate and that L.M. appeared to have the ability to financially support the children; regardless, L.M.’s home was “not found to be favorable for the placement of children,” and the home-study report includes an allegation that L.M. had been aware, of the location of the children during the time that DHR could not locate the children. According to Pope,. the daughter had reported knowing L.M., which had suggested to. DHR that L.M. had been in contact with the children, that she had deceived DHR, and that she had lacked protective capacity. L.M. testified that she had had some contact with C.M. while he and K.R. had had the children “in hiding,” that she had asked C.M. to let her have the children, but that C.M. had never told her where the children were located. L.M. said that she had not seen the daughter since October 2013, and she said: “I don’t think if I'was in a lineup [the daughter] could pick me out or if I was sitting in the room that she would even look at me like she knew me.” Pope testified that L.M. was not a proper custodian because either the children did not know L.M. or, if they • knew her, like the daughter had claimed, L.M. had participated in concealing them whereabouts. Pope said that L.M. intended to remain in contact with C.M. and. that L.M., had said that C.M. had done nothing to put the children at risk.
L.M, said- that her- husband had been at work and.unable to participate in the home study; however, she claimed that he had told her that an award of custody of the children was “fine with him.” Pope testified that she had contacted L.M.’s husband by telephone because she had needed information regarding L.M.’s husband’s income and that he had informed her that he did not think that the children belonged in his home and had politely refused to provide any additional information. Pope noted in the’ home-study report that L.M.’s husband had “respectfully decline[d] the desire to provide or confirm ... that he is not in agreement [with] the children being placed in the care and custody of his wife.” L.M.’s husband did not appear at the hearing because, according to L.M., he was at work.
Although we do not condone DHR’s unilateral decision to deny L.M.’s court-or *537 dered supervised visitation, we conclude that the juvenile court could have properly determined that L.M. was not a-suitable custodian for reasons Other than her- lack of a relationship with the children. Despite L.M.’s denials, Pope’s testimony tended to demonstrate that L.M.’s husband had not supported her desire for an award of custody of the children and that, even though she had had contact with C.M. during the time, that DHR could not locate the children, L.M. had refused to disclose C.M.’s or the children’s whereabouts. The juvenile court apparently resolved the factual disputes in favor of DHR, and it concluded that custody of the children should not be awarded to L.M. Our standard of review prevents us from reweighing the evidence and substituting our judgment for that of the juvenile court. Ex parte R.E.C., 899 So.2d 272, 279 (Aa. 2004) (quoting Delbridge v. Civil Serv. Bd. of Tuscaloosa, 481 So.2d 911, 913 (Ala. Civ. App. 1985)) (stating that an appellate court does not “ ‘reweigh the testimony and substitute its own judgment for that of the trier of fact’ ”).
In conclusion, we reject L.M.’s argument that she is a relative of the children as that term is defined by § 12 — 15—301(13), and we affirm the judgment of the juvenile court, which declined to award custody of the children to her.
2150658 — AFFIRMED.
2150659 — AFFIRMED.
Thompson, P. J., and Pittman and Donaldson, JJ., concur.
Moore, J., concurs in the result, without writing.

. On remand from this court, the juvenile court entered two orders certifying the judgment as final pursuant to Rule 54(b), Ala, R. Civ. P. When an action involves multiple claims or parties, Rule 54(b) gives the trial court the discretion to "direct the entry of a final judgment as to one or more but fewer than all of thé claims or parties.” If a judgment is properly certified as final pursuant to Rule 54(b), an appeal will lie from that judgment.

. The judgment reads, in pertinent part:
"[L.M.] is the biological 3rd cousin to the minor children and legally the 2nd cousin to [the daughter], [L.M.] is related to the minor children to the 4th degree of blood relations.”

.L.M. purported to appeal the judgment regarding case number JU-13-548.01, case number JU-13-548.02, case number JU-13-548.03, case number JU-13-548.05, case number JU-13-274.01, case number JU-13-274.02, and case number JU-13-274.04. We have restyled the appeals to accurately reflect from which actions her appeals arise.

. Section 12-15-301 was amended by Act No. 2016-129, Ala. Acts 2016, effective July 1, 2016. Before the amendment, the definition of "relative” was found in § 12-15-301(11); as part of the amendment,’§ 12-15-301(11) renumbered as § 12-15-301(13).

. See Alabama State Pers. Bd. v. Garner, 4 So.3d 545, 553-54 (Ala. Civ. App. 2008)(ex-plaining the method for computing the degrees of kinship). In this case, the datighter was adopted by BCR.; therefore, under the law, L.M.’s and K.R.'s grandparents are the daughter’s- great-grandparents. Counting the degrees of relationship between the daughter and the daughter’s and L.M.’s common ancestors, the daughter's great-grandparents, yields three degrees of relationship. Counting from the common ancestors, L.M.’s grandparents, to L.M. yields two additional degrees of relationship. Therefore, the daughter and L.M. are related to one another in the fifth degree. The son’s great-great-grandparents are L.M.’s grandparents.. Counting the degrees of relationship between the son and the son’s and L.M.’s common ancestors yields four degrees of relationship. Counting from, the common ancestors, L.M.’s grandparents, to L.M., the son’s great-great grandparents, yields two additional degrees of relationship. Therefore, the son and L.M. are related to one another in the sixth degree.